## FIRST NATIONAL BANK OF GREELEY v. BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WELD.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 180. Argued January 18, 21, 1924.—Decided April 7, 1924.

An action by a national bank to recover the amount of taxes levied by a State and paid under protest, upon the ground that they were excessive, discriminatory and violative of Rev. Stats., § 5219, *held* not maintainable in the District Court, where the plaintiff failed to avail itself of an administrative remedy afforded by the state law as conclusively established by a decision of the State Supreme Court. P. 453.

Affirmed.

ERROR to a judgment of the District Court sustaining a demurrer and dismissing the complaint in an action by the bank to recover money paid under protest as taxes.

*Mr. Harry N. Haynes,* with whom *Mr. Ralph L. Dougherty* was on the briefs, for plaintiff in error.

*Mr. William R. Kelly* and *Mr. Charles Roach,* Deputy Attorney General of the State of Colorado, with whom *Mr. Russell W. Fleming,* Attorney General, and *Mr. Riley R. Cloud,* Assistant Attorney General, were on the brief, for defendant in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action to recover the amount of certain taxes levied for the fiscal years 1913 and 1914 and paid under protest. The court below sustained a demurrer to the amended complaint, and, plaintiff electing to stand thereon, entered judgment of dismissal.

Reversal of the judgment is sought here on the ground that the taxes were assessed and collected in contravention of the due process and equal protection clauses of the Fourteenth Amendment and of § 5219, U. S. Rev. Stats.

Under the Colorado statute, R. S. Colo. 1908, c. 122, a bank is required to make a list of its shares, stating their market value, and of its shareholders for the information of the county assessor, who is thereupon 'directed to assess such shares for taxation in all respects the same as similar property belonging to other corporations and individuals. §§ 5754, 5756. If any taxpayer is of the opinion that his property has been assessed too high, or otherwise illegally assessed, he may appear before the assessor and have the same corrected. § 5639. The County Commissioners of each county are constituted a Board of Equalization, with power to adjust and equalize the assessment among the several taxpayers; with reference to which any dissatisfied taxpayer may be heard. § 5761.

The State Tax Commission, created in 1911, is authorized to supervise the administration of and enforce the tax laws, and exercise supervision over county assessors and boards of equalization, to the end that all assessments be made relatively just and uniform and at their true and full cash value. Comp. L. Colo. 1921, c. 155, § 7334, par. 1. The Commission may raise or lower the assessed value of any property, first giving notice to the owner thereof and fixing a time and place for hearing. *Id.* par. 7. Authority is conferred upon the Commission to receive complaints and examine into all cases where it is alleged that property has been fraudulently, or improperly or unfairly assessed. § 7336. It shall, on or before the first day of October of each year, increase or decrease the valuation of the property in any county by such rate per cent. or such amount as will place the same on the assessment roll at its full and true cash value, § 7352; and must thereupon transmit to the State Board of

Equalization a statement of the amount to be added or deducted. § 7353. It then becomes the duty of the State Board of Equalization to examine the abstracts of assessment submitted by the Commission, and certify to the county assessor of each county a record of its action thereon. § 7354. The Commission is required to be in session every day except Sundays, and may hold sessions anywhere in the State. § 7330.

The essential averments of the complaint may be shortly stated: Plaintiff made and delivered to the County Assessor of Weld County the statement required by law. The Assessor thereupon fixed the value of its shares, as well as that of the shares of other banks within the county, at their full cash and market value; but fixed the assessed value of the property of the remaining taxpayers in the county at 61%, for 1913, and 80%, for 1914, of such cash and market value. The County Board of Equalization accepted this assessment without change. The Assessor thereupon transmitted to the Tax Commission the abstracts required by law. The Tax Commission determined that the property of the county as a whole had been underassessed, and recommended a horizontal increase of 63% in 1913 and 25% in 1914, as necessary to bring it to the full cash value. This determination was approved by the State Board of Equalization and the County Assessor was directed to make the increase, with the result, as alleged, that plaintiff's assets, and those of all other banks in the county, were in fact assessed at an amount 63% in excess of their value for the year 1913 and 25% in excess thereof for the year 1914. In other counties of the State, either no increase of valuation was made or the increase was comparatively small. The result was that the banks of Weld county were assessed and compelled to pay upon a valuation grossly in excess of that put upon other property in the same county and likewise in excess of that put upon other banks in other

counties of the State. It does not appear from the complaint that plaintiff applied to any of the taxing authorities to reduce the assessment of its property or correct the alleged inequalities, prior to the final levy of the tax; but sometime after such levy had been completed, it made application for abatement and rebate, which application was approved by the County Board but disallowed by the State Tax Commission.

We are met at the threshold of our consideration of the case with the contention that the plaintiff did not exhaust its remedies before the administrative boards and consequently cannot be heard by a judicial tribunal to assert the invalidity of the tax. We are of opinion that this contention must be upheld.

The Supreme Court of Colorado, in a suit brought by this plaintiff against the County Assessor, involving the same tax for 1913, and presenting the same questions here involved, sustained the refusal of a lower court to enjoin the collection of the tax, and held: (a) That the flat increase made by the Tax Commission was in strict conformity with the state statutes; (b) That this action being approved by the State Board of Equalization constituted a final assessment; (c) That under the statute the plaintiff was bound to know the authority of these taxing agencies in the premises and that they were required to meet at certain places, on certain days, and complete their labors within designated dates; and (d) "With full knowledge of the respective powers of these several boards to make corrections in assessments and adjustments in equalization, essential to bring about a complete and equitable assessment of all property within the state, it remained inactive until long after the tax was laid, when it applied for an abatement or rebate of the tax. The aforesaid tribunals were open to plaintiff in error prior to the laying of the tax, but it refrained from seeking relief therein, and may not now complain." *First National Bank* v. *Patterson,* 65 Colo. 166, 172–173.

The effect of this is to hold that an administrative remedy was in fact open to plaintiff under the statutes of the State, and by this construction, upon well settled principles, we are bound. *McGregor* v. *Hogan,* 263 U. S. 234; *Farncomb* v. *Denver,* 252 U. S. 7, 10; *Londoner* v. *Denver,* 210 U. S. 373, 374; *Price* v. *Illinois,* 238 U. S. 446, 451; *Western Union Tel. Co.* v. *Gottlieb,* 190 U. S. 412, 425.

Plaintiff seeks to excuse its failure to apply to the County Board for an equalization by saying that this was a public duty of the Board and not a private remedy; and *Greene* v. *Louisville & I. R. R. Co.,* 244 U. S. 499, 521, is relied upon as authority. The most cursory examination of that case, however, will disclose its inapplicability. There the divergent assessments were made by two assessing boards, neither having control or supervision of the other; and it was held that complainants, whose property had been assessed by one of these boards, were not entitled, under the Kentucky statutes, to complain to the other board that its assessments were too low. A very different question is presented here, where the same board has affirmed both assessments, is expressly vested by statute with the power of equalization and may exert its power at the instance of anyone aggrieved. *Hallett* v. *County Commissioners,* 27 Colo. 86, 93; *Barnett* v. *Jaynes,* 26 Colo. 279, 282.

It is urged further that it would have been futile to seek a hearing before the State Tax Commission because, first, no appeal to a judicial tribunal was provided in the event of a rejection of a taxpayer's complaint; and, second, because the time at the disposal of the Commission for hearing individual complaints was inadequate. But, aside from the fact that such an appeal is not a matter of right, but wholly dependent upon statute, 2 Cooley on Taxation, 3d ed., p. 1393, we cannot assume that if application had been made to the Commission proper relief

would not have been accorded by that body, in view of its statutory authority to receive complaints and examine into all cases where it is alleged that property has been fraudulently, improperly or unfairly assessed. *Collins* v. *City of Keokuk,* 118 Iowa, 30, 35. Nor will plaintiff be heard to say that there was not adequate time for a hearing, in the absence of any effort on its part to obtain one. In any event the decision of the State Supreme Court in the *Patterson Case,* that such remedies were, in fact, available, is controlling here.

It is contended, however, that the decision in that case turns upon the point that plaintiff had an adequate remedy at law, and not that it had lost its right by neglecting to seek an administrative remedy. It is true the court, after the statement quoted above, proceeds to say that plaintiff cannot have relief in equity, but this seems to be put forth as an independent ground for affirming the judgment below. It follows the unqualified statement that plaintiff, having refrained from seeking the administrative relief open to it, " may not now complain;" and is introduced by the words (p. 174): " But apart from this, if the tax was not legally laid, plaintiff in error could, upon payment thereof, recover the same from the county under the provisions of § 5750 R. S. 1908." It is not suggested that in so doing the requirement, already broadly recognized, that administrative remedies must be exhausted as a necessary prerequisite to a judicial challenge of the tax, could be dispensed with. And, accepting the decision of the state court that such remedies were, in fact, open and available under the Colorado statutes, it could not be dispensed with. *McGregor* v. *Hogan, supra; Farncomb* v. *Denver, supra,* p. 11; *Stanley* v. *Supervisors of Albany,* 121 U. S. 535; *Petoskey Gas Co.* v. *Petoskey,* 162 Mich. 447, 452; *Township of Caledonia* v. *Rose,* 94 Mich. 216, 218; *Hinds* v. *Township of Belvidere,* 107 Mich. 664, 667; *Ward* v. *Alsup,* 100 Tenn. 619, 746,

Plaintiff not having availed itself of the administrative remedies afforded by the statutes, as construed by the state court, it results that the question whether the tax is vulnerable to the challenge in respect of its validity upon any or all of the grounds set forth, is one which we are not called upon to consider. The judgment of the District Court is accordingly

*Affirmed.*