**HOLLY SUGAR CORPORATION v. BOARD OF COM'RS OF MESA COUNTY et al.**

(District Court, D. Colorado. January 8, 1926.)

No. 7941.

**I. Taxation ⟷542—Remedy against excessive tax levy is to pay under protest and sue to recover.**

Under C. L. Colo. 1921, § 7447, remedy of property owner for levy of excessive tax is to pay under protest and sue county to recover taxes paid.

**2. Taxation ⟷482(I)—Taxpayer must take notice at his peril of procedure prescribed by taxation statutes.**

Colorado taxation statutes give taxpayer ample notice of what is required of him and opportunity to be heard, and he must take no-

tice at his peril, and is not entitled to hearing at every step of proceeding.

**3. Taxation ⟷485(4)—Boards of equalization need not examine witnesses, or base action on particular kind of evidence.**

In absence of statutory mandate, boards of equalization are not required to examine witnesses, or base their actions on any particular kind of evidence.

**4. Taxation ⟷482(I)—Increase in assessment by board of equalization after statutory time for action held a nullity.**

Under C. L. Colo. 1921, §§ 7463, 7465, increase in assessment by board of equalization without notice after third Monday in October, on recommendation of tax commission, was a nullity, regardless of whether tax commission, under sections 7334, 7352–7354, had authority to recommend increase.

**5. Taxation ⟷480—Curative statute held not to validate increase in assessment.**

Curative statute (C. L. Colo. 1921, § 7256) *held* not to validate increased assessment made by state board of equalization without notice after date on which it was authorized to act.

**6. Statutes ⟷245—Taxation statutes construed most favorably to taxpayer.**

Taxation statutes are construed most favorably to taxpayer in Colorado.

At Law. Action by the Holly Sugar Corporation against the Board of County Commissioners of Mesa County, State of Colorado, and the Colorado Tax Commission. On demurrer to complaint. Demurrer overruled.

McMullin, Sternberg & Helman, of Grand Junction, Colo., for plaintiff.

Wm. L. Boatright, Atty. Gen., and Scott W. Heckman, of Grand Junction, Colo., for defendants.

SYMES, District Judge. This is a statutory action by the Holly Sugar Corporation against the board of county commissioners of Mesa county, Colo., and the Colorado tax commission, to recover $4,598.35, the amount of an alleged erroneous and illegal tax collected by the treasurer of Mesa county, under protest, upon an alleged erroneous and illegal assessment for the year 1924.

Both defendants have demurred on the ground that the complaint does not state a cause of action, so at this time we take as true all allegations of fact properly pleaded. They are, briefly, that the plaintiff was the owner and operator of a beet sugar factory in Mesa county; that in 1924, in the manner prescribed by law, the assessor of said county assessed the buildings, machinery, and real estate comprising the factory at the aggregate sum of $450,490. This is not objected to.

It is then alleged in paragraph 7 that the assessor duly transmitted to the Colorado tax commission an abstract of the real and personal property of his county and the value thereof, containing this assessment; that thereafter .the said commission illegally, arbitrarily, and without having exercised any discretion in the matter, recommended and requested that the state board of equalization raise the assessed value of this particular factory to $600,490; that this recommendation was transmitted to said board by the 1st of October, 1924, but was not acted on or considered by that board on or before the third Monday of October, 1924, on which date, it is alleged (section 7465, Comp. Laws 1921), said board of equalization completed its labors, exhausted its power and jurisdiction, and adjourned.

It is next alleged that on November 15th, following, the said board attempted and pretended to reconvene and exercise its functions, purported to approve the increase, and so informed the county assessor; that the latter, in compliance therewith, changed his assessment accordingly; and that this action resulted in the increased tax, which plaintiff paid under protest. This suit is to recover the alleged excess. There is no allegation that the plaintiff ever appeared before the board of equalization or filed a protest.

[1] In Colorado the remedy of a property owner for the levy of an excessive tax is to pay under protest, and bring an action against the county to recover the same, the latter being‛ liable therefor. Section 7447, Comp. Laws 1921; Spaulding Mfg. Co. v. La Plata County, 63 Colo. 438, 168 P. 34; Kendrick v. A. Y. & M. Mining Co., 63 Colo. 214, 164 P. 1161.

The questions presented are two: First, does the complaint show that the plaintiff exhausted the administrative remedies open to him before bringing this action; and, secondly, in view of the provisions of sections 7463 and 7465, Comp. Laws Colo. 1921, has the state board of equalization any jurisdiction, existence, or power to act as a board of equalization after the third Monday of October?

[2] The statutes of Colorado provide a comprehensive method for the valuation of property for revenue purposes. Assessments in the first instance are made by the county authorities, who have supreme power within the counties, and report them to the state tax commission, which is empowered to take county returns, examine them, and either raise or lower assessments, or make recommendations to the state board of equalization

for such changes or corrections in the individual or aggregate returns of the counties as are in their opinion necessary, to the end that all property, both real and personal, wherever located, be assessed at its full cash value. The state board of equalization is the final arbiter in fixing values upon property for the purposes of taxation. People v. Pitcher, 61 Colo. 168, 156 P. 812, Ann. Cas. 1918D, 1185.

In the case at bar the plaintiff does not complain of the valuation fixed by the county assessor, but does complain of an increase of $150,000 recommended by the tax commission to the board of equalization, and adopted by that board as its final valuation. It will be observed that this raise was made, not by the tax commission in the first instance, but by the board of equalization upon its recommendation. The statutes make ample provision throughout the proceedings for the hearing of complaints by taxpayers who feel themselves aggrieved.

The Colorado statutes involved here have been passed upon repeatedly, not only by the highest court of the state, but by the Supreme Court of the United States, and upheld to the fullest extent. It is well settled that the statutes give the taxpayer ample notice of what is required of him, and opportunity to be heard, and that he must take notice at his peril of the procedure prescribed. He is not entitled to a hearing at every step of the proceeding, but it is suggested if, as the Colorado statutes provide, he has a single opportunity to be heard before a tribunal that makes the assessment, or raises it or alters it, it is sufficient. These authorities also hold that when, as in Colorado, the statutes determine the date of assessment, the time and place of meeting of the various boards that pass on the same, that this of itself is sufficient notice to the taxpayer, and no other notice is required.

[3] Likewise, in the absence of a statutory mandate, boards of equalization are not required to examine witnesses, or base their action upon any particular kind of evidence, but may proceed in their own way, and on any information satisfactory to them. People v. Pitcher, supra; First Nat. Bank v. Patterson, 65 Colo. 166, 176 P. 498; First Nat. Bank of Greeley v. Weld County, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784; State ex rel. Colorado Tax Commission v. Pitcher, 56 Colo. 343, 138 P. 509.

[4] The plaintiff in this case complains only of the increase of $150,000 "recommended and requested" by the tax commission in its report to the board of equalization, and lat-

er alleged to have been adopted by that board' as the final valuation of this property. The Attorney General says that the tax commission did not purport to act under the power given it by section 7334 to raise assessments; neither did it make any attempt to reassess the plaintiff's property, and no complaint is made of lack of notice of the action of the tax commission. The commission acted under sections 7352—7354, and there may be a question, not necessary to a decision here, as to whether the tax commission can raise, or recommend a raise, of a particular assessment under these sections. We are only concerned with the alleged wrongful action of the board of equalization, regardless of any action of the tax commission.

Section 7463, Comp. Laws of Colorado 1921, provides that the state board of equalization "*shall* sit on the first Monday of October in each year, at the executive office." Section 7465 says: "On or before the third Monday of October in each year the board *shall* complete the equalization," and that, in the event the board fails to sit, or fixes no different rate, the rate shall be the same as levied in the preceding year.

The Supreme Court of Colorado has not had occasion to say whether these provisions are mandatory or directory. The following expressions of that court, however, are some indication, at least, that they should be held mandatory:

In Union Bank v. Commissioners, 75 Colo. 298, at page 300, 225 P. 851, the court held that the taxpayer must take statutory notice of the fact that assessments made by the assessor were subject to change by superior governmental agencies, "Which were required to meet at certain places and on certain dates and complete their labors within a designated time." The same language is used in First National Bank v. Patterson, supra, and First National Bank v. Weld County, 264 U. S. at page 453, 44 S. Ct. 385, 68 L. Ed. 784.

In State ex rel. Tax Commission v. Pitcher, 56 Colo. at page 368, 138 P. 518, the court said: "The state board of equalization is required to meet at a certain place, on a certain day, and to complete its labors by another day." And on page 369 (138 P. 518), speaking of the notice, it said generally: "The rule is equally well settled that the only notice necessary in such cases is the law which fixes the time and place of the holding of the meetings of such boards."

It seems to be the general rule that, when the statute does not fix the time and place of the meeting of such a board, the taxpayer is entitled to specific notice, but when the statute determines the date of assessment, and the time and place of meeting of the board charged with that duty, then the statute itself is all the notice the taxpayer can demand.

There is a long line of authorities, the most important of which are cited by the plaintiff, construing similar statutes of other states. They are practically in accord in holding that a taxpayer is not entitled to any other notice than that conveyed by statute such as ours, and that, where there is a date set for the completion of the work of a board of equalization, it cannot act after that date, and, if it does, its action is a nullity. For instance:

The Supreme Court of Mississippi, in City of Biloxi v. Biloxi Real Estate Co., 94 Miss. 653, 48 So. 730, 136 Am. St. Rep. 584, said: "If section 3422 of the Code of 1906 limited the mayor and board of aldermen in the time within which they should meet for the purpose of increasing or diminishing the valuation of property assessed for taxation to a regular or special meeting to be held in September or October and no other time, then any meeting held for this purpose, even though it be an adjourned meeting beginning on the 31st day of October, which extended the sitting time fixed by the statute for this purpose, is utterly void as to anything done by them after that date."

In Matador Land & Cattle Co. v. Custer County, 28 Mont. 286, 72 P. 662, the county board of equalization was required to meet on the third Monday of July in each year, and continue in session not later than the second Monday in August. The court said: "While boards of equalization are provided for in the Constitution, their periods of life are prescribed by the Legislature, and they cannot hold for any other or longer period than the Legislature has fixed. So, when the board of equalization of Custer county adjourned on the second Monday of August, 1896, its term of existence for that year absolutely expired."

In Mudge v. McDougal (D. C.) 222 F. 562, Judge Trieber said (dictum) that, where a state statute limited the sessions of a board of equalization between certain dates, it became functus officio after such date.

The Supreme Court of the United States has held in a long line of decisions, known as the State Railroad Tax Cases, that a taxpayer is entitled to notice of the time and place of the meeting, and an opportunity to be heard before any taxes, new or additional,

are finally imposed upon his property, but that statutory notice is sufficient, if specific as to time and place. By the same reasoning it follows that, where the statute is not complied with, all proceedings held pursuant thereto by boards of equalization are, in the absence of other notice, void.

Lander v. Mercantile Bank, 186 U. S. 459, 22 S. Ct. 908, 46 L. Ed. 1247, and Pittsburgh, etc., R. R. v. Backus, 154 U. S. 425, 14 S. Ct. 1114, 38 L. Ed. 1031, cited by the Attorney General, are not in point. In the first, an Ohio case, the statute prescribed that the board of equalization should meet on the third Tuesday of June, but did not limit the time within which their work should be completed. The Supreme Court held that, the time of the first meeting having been fixed, it was sufficient notice, provided subsequent adjournments were to a day certain, so that the taxpayer could be on hand. In the second case, the board of equalization of Indiana was required by law to convene on the first Monday of August, with a proviso that the duration of their session should not exceed 40 days. There was no question but that the action of the board complained of took place within that period, and the court simply held that personal notice was unnecessary, in view of the fact that the statute named the time and place of the first meeting, and adverts to the general rule laid down in the Railroad Tax Cases that the constitutional guaranties are met if a taxing board has its time of sitting fixed by law, its sessions are not secret, and no obstruction exists to the appearance of any one before it to assert his rights. But in the instant case, according to the allegations of the complaint, the board, without notice, not only raised the plaintiff's assessment at a meeting held outside of the statutory time, but apparently took no preliminary action on plaintiff's individual assessment within the statutory time.

[5] It is urged, however, that the defect, if any, is cured by the provisions of section 7256, C. L. of 1921—the so-called curative section. Such statutes may remedy defects or irregularities in tax proceedings, but have never been held sufficient in the absence of very clear language, to validate an assessment which could not have been authorized in the first instance, or cure the total lack of an assessment, or want of notice, or failure to give the taxpayer an opportunity to be heard. 26 R. C. L. § 309. In Tallon v. Vindicator Co., 59 Colo. 316, 149 P. 108, it was held that where a step incident to the levy or assessment of a tax was made for the benefit of the taxpayer, it was mandatory, as distinguished from steps which only concern the taxing officials. Notice is primarily for the benefit of the taxpayer.

Boards of equalization are solely creatures of statute, and when it is provided that they must meet at a certain time and place, and complete the equalization by a certain day, it means exactly what it says, and they lack jurisdiction in acting in violation thereof. The notice conveyed by a statute would be no notice at all, if the board can meet at any time or place that suits its pleasure. It would be unreasonable to compel plaintiff to sit on the doorstep, so to speak, during the time prescribed for their meetings, if they could disregard the plain wording of the statute, and meet at a time or at a place other than that specified.

[6] We must also bear in mind that statutes on the subject of taxation are construed most favorably to the taxpayer in Colorado. The process of ascertaining and fixing the amount of taxation to be paid on real and personal property is a long and complicated process, initiated in the spring of the year, and not completed until fall. If the different individuals and boards who have to do with the same were permitted to perform their duties at their own time and pleasure, the whole scheme would fall, and the time-table and notices prescribed by the law would be dead letters.

The second question is decisive of the instant case, and must be answered in the negative. This renders the first question moot, although, had the board acted within the time prescribed by statute, the plaintiff could not be heard to complain. It therefore follows that a good cause of action is stated, within section 7447, C. L., 1921.

The demurrer is overruled.