**BECK v. MISSOURI VALLEY DRAINAGE DIST. OF HOLT COUNTY, MO., et al.**

No. 8820.

Circuit Court of Appeals, Eighth Circuit.

Jan. 13, 1931.

Rehearing Denied Feb. 16, 1931.

Cyrus Crane, of Kansas City, Mo. (Richard S. Righter, of Kansas City, Mo., on the brief), for appellant.

A. M. Tibbels, of Mound City, Mo., and John F. Rhodes, of Kansas City, Mo. (J. D. Bowersock and R. B. Fizzell, both of Kansas City, Mo., on the brief), for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SCOTT, District Judge.

VAN VALKENBURGH, Circuit Judge.

Appellant, a citizen and resident of the state of Oklahoma, is the owner of 1,143 acres, approximately, of land in Holt county, Mo. January 10, 1927, the owners of a majority of the acreage in a contiguous body of swamp, wet, and overflow land, and lands subject to overflow, situate in Holt county, Mo., filed in the circuit court of said county their petition and articles of association for the incorporation of the Missouri Valley drainage district under and by virtue of the provisions of section 4378 of article 1 of chapter 28, Rev. St. Mo. 1919. In this proposed district, 1,085.94 acres of appellant's land were included. The proposed articles of association contained the statements required by section 4378, among other things, the name of the district, the number of years the same was to continue, the boundary lines of the proposed drainage district, and the names of the owners of lands or other property in said district so far as known, together with a description of the lands and other property owned by each. Due notice was given of the date when said petition and articles of association would be heard, in accordance with the provision of section 4379, Rev. St. Mo. Section 4380 next following provides that:

"Any owner of real estate or other property in said proposed district, * * * shall, on or before the first day of the term of court at which the cause is to be heard, file his objection or objections why such drainage district should not be organized and incorporated. Such objection or objections shall be limited to a denial of the statements in the articles of association, and shall be heard by the court in a summary manner, without unnecessary delay. * * * If the court finds that the property set out in said articles of association should not be incorporated into a drainage district, it shall dismiss said proceedings and adjudge the costs against the signers of said articles of association. * * * The articles of association may be amended as any other pleading."

On the return day of the notice, many objections to the incorporation of the district were filed. Among them, the owners of 4,768.04 acres objected to the inclusion of their said lands, whereupon the petitioners amended their articles of association by changing the boundaries of the district in such manner as to exclude this acreage. The amendment was accepted by the court, which, on March 10, 1927, entered its decree incorporating the drainage district, and reciting therein the exclusion of said 4,768.04 acres, for the reason that the same were conceded not to be wet, swamp, or overflow lands, or lands subject to overflow. Appellant, al-

though advised of this hearing, filed no objection to the organization or incorporation of the district. Thereafter, in due course, and as provided by statute, a board of supervisors was elected, a chief engineer and assistants were appointed, a plan "for draining, leveeing, and reclaiming the lands and property described in the articles of association or adjacent thereto from overflow of or damage by water" was adopted, and a certified copy thereof transmitted to the circuit court of Holt county. In conformity with section 4388, the judge of that court appointed commissioners to assess the amounts of benefits and damages as provided in section 4390. Upon the filing of the commissioners' report, the property owners were notified for the purpose of enabling them to examine the report and to file exceptions to all or any part thereof. Section 4392 permits the filing of such exceptions in the following language:

"The drainage district, or any owner of land or other property in said district, may file exceptions to said report or to any assessment for either benefits or damages. * * * All exceptions shall be heard by the court and determined in a summary manner so as to carry out liberally the purposes and needs of the district."

The court is empowered, at any time before final confirmation or approval, to refer the report back to the commissioners with or without instructions, and exceptions to the second report, when filed, are permitted, notice to the landowners being given as before. Section 4392 concludes as follows:

"Any person may appeal from the judgment of the court, and upon such appeal there may be determined either or both of the following questions: First, whether just compensation has been allowed for property appropriated, and, second, whether proper damages have been allowed for property prejudicially affected by the improvements."

Appellant described his participation, or lack thereof, in the proceedings incidental to the establishment of this drainage district, and the steps taken as above stated, as follows:

"When the Missouri Valley Drainage District was organized in the Circuit Court of Holt County I didn't file any objections at the time of the incorporation to the inclusion of my lands in the district. I was not present when the first hearing was had as to the incorporation of the District. I filed no exceptions to the Commissioners' report in the Circuit Court. I was present when the objectors came in there on their assessments and a hearing was had. I was there part of the time and was a witness in the Court Room. I was present when they elected their first Board of Supervisors and voted at the election."

Benefits in the sum of $46,112.20 were assessed against appellant's lands. The total estimated cost of the drainage work, however, makes it apparent that the cost of construction under the proposed plan will be but 60 per cent. of the assessed benefits.

The report of the commissioners was filed September 5, 1927. The decree of the Holt county circuit court confirming this report was entered December 12, 1927. February 9, 1928, appellant filed his bill in the District Court of the United States for the Western District of Missouri, praying that during the pendency of the cause a temporary injunction be issued restraining and enjoining the Missouri Valley drainage district of Holt county, Mo., the members of its board of supervisors, the recorder of deeds, and the collector of revenue of Holt county, until the further order of the court, from taking any further action with respect to the proceedings aforesaid, and that finally "the defendants be forever enjoined and restrained from in any manner asserting or claiming the validity of the organization of said district, or the legality of any of its acts, or the validity of any taxes or assessments levied or attempted to be levied by it, or the validity of any bonds issued or attempted to be issued by it."

The grounds for the relief sought are epitomized as follows:

"Article 1 of chapter 28 of the Revised Statutes of Missouri for 1919 and section 4380 thereof in particular, are unconstitutional and deprive plaintiff of his property without due process of law, and deprive him of the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States because in providing for the establishment of a drainage district said article 1 and section 4380 expressly deny a non-petitioning property owner within such district the right to a hearing on the question whether his property will be benefited by the proposed improvement, and whether such a district should be organized.

"The entire drainage proceeding is void because after the Articles of Association had been filed and after notice had been given by publication to landowners within the district, protestants owning land in a total area of 4,769.4 acres included within the district,

were excluded from the district by agreement of the petitioners. The character and the dimensions of the district were thereby so radically reduced and altered that a new notice and hearing were essential to a valid organization, and to the protection of appellant's constitutional rights.

"Appellant is entitled to the equitable relief prayed for because his land will not be benefited but will be injured by its inclusion within this drainage district, and the taxing of appellant's land for a drainage district which does not benefit it but injures it, deprives appellant of his property without due process of law.

"This proceeding is illegal and void because no outlet is provided for the purported drainage system and because appellees are proposing and attempting to collect the surface water over a large area and dump it upon land in the State of Kansas without any right, license, or authority to do so."

Upon hearing, the federal District Court dismissed appellant's bill with prejudice. This appeal followed. The jurisdiction of the federal court is based primarily upon the allegation that the statutes under which the drainage district was organized, and the further proceedings complained of were instituted, are unconstitutional, in that they deprive appellant of his property without due process of law, and deprive him of the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. At the outset appellees in their answer interposed a motion to dismiss, which the trial court disregarded, proceeding to a decision upon the merits. We feel equally that the case can be more satisfactorily disposed of by a consideration of the assignments of error upon which appellant relies.

▮▮▮ 1. The first contention is that article 1 of chapter 28, R. S. Mo. 1919, and section 4380 thereof in particular, are unconstitutional, because they "expressly deny a nonpetitioning property owner within such district the right to a hearing on the question whether his property will be benefited by the proposed improvement, and whether such a district should be organized." Section 4380 does permit such property owner to file objections to the organization and incorporation of such drainage district. The express denial to which reference is made is to be found in these words:

"Such objection or objections shall be limited to a denial of the statements in the articles of association."

The statements which condition the organization of the district are, mainly, that the acreage involved forms a contiguous body of swamp, wet, or overflowed lands, or lands subject to overflow, situate in one or more counties in the state; that the subscribers to the articles are the owners of a majority of this acreage; that the purpose of the reclamation project is to protect said lands from overflow and from the effects of water flowing onto, thereon, and thereover; and that such drainage reclamation will be conducive to the public health, convenience, and welfare, and of public utility and benefit. All such statements, upon objection, are subject to denial. The articles of association also contain the boundary lines of the proposed drainage district, and the names of the owners of lands and other property in the district, together with a description, so far as known, of the lands and other property owned by each. It would seem that these statements likewise are subject to challenge, if not to categorical denial. The Supreme Court of Missouri in Fabius River Drainage District v. Scott et al., 240 Mo. 31, 34, 144 S. W. 1097, says that articles of incorporation constitute one essential in the formation of a drainage corporation, and an application for the charter another. The application referred to is the petition or prayer for incorporation which accompanies the articles. Section 4379, Rev. St. Mo. 1919, provides for notice by publication "to be made at least fifteen days prior to the first day of the next regular term of the circuit court at which said articles of association and petition are to be heard." We find it unnecessary, however, to consider the extent of challenge to the incorporation of a drainage district, which a liberal construction of the statute would permit. By overwhelming weight of authority it has been decided that the mere fact that a person's property has been included in a drainage district in no manner affects his rights, provided at some stage of the proceeding he is accorded a hearing upon the question of benefits and damages. It is the taking or damaging of the property, or the assessment of benefits against it, and not the incorporation of the district, that affects the owner's rights. In re Drainage District (Buschling v. Ackley), 270 Mo. 157, 164, 165, 192 S. W. 727; Little River Drainage District v. Railroad, 236 Mo. 94, 139 S. W. 330, 333. In the latter case it is pointed out that "it is not necessary to the constitutionality of the statute providing for the incorporation of the drainage district that any notice whatever should be given to the land owner

in laying out and determining the district"—citing 2 Page & Jones on Taxation by Assessment, § 743. In Ross v. Board of Supervisors, 128 Iowa, 427, 104 N. W. 506, 509, 1 L. R. A. (N. S.) 437, also cited with approval, the following satisfactory discussion of the point is found:

"Appellant takes the position that the landowner is entitled to notice and hearing as to the extent of this district, and whether his land shall be included therein, and that the failure to provide for such notice and hearing renders the statute unconstitutional. In our opinion, the objection is unsound. The division of a state or lesser municipal territory into districts for the purposes of taxation or public improvement is a legislative matter, and the citizen affected thereby cannot complain because the power is exercised without notice to him. If, for instance, the Legislature saw fit to divide the entire state into drainage districts, and make the lands in each district chargeable with the expense of such drains therein as the public welfare might demand, we apprehend that such legislation would be open to no serious constitutional objection on the ground that it deprives the landowner of property rights without due process of law. That such legislative power for local purposes may be delegated by the Legislature to minor municipalities is a matter of universal recognition and constant practice."

Of course, where a taxing district is not established by the Legislature, but by exercise of delegated authority, it is essential to due process of law that the landowners be accorded an opportunity to be heard on the question of benefits and damages. Embree v. Kansas City, etc., Road District, 240 U. S. 242, 36 S. Ct. 317, 60 L. Ed. 624. But, the Fourteenth Amendment does not "invalidate an act authorizing an appointed board to determine whether a proposed drain will be of public benefit, and to create a drainage district consisting of land which it decides will be benefited by such drain, and to make special assessments accordingly, if, as here, notice is given and an opportunity to be heard afforded the landowner before the assessment becomes a lien against his property." Soliah v. Heskin et al., 222 U. S. 522, 32 S. Ct. 103, 56 L. Ed. 294; Hagar v. Reclamation District, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569. It is sufficient if this notice is given at some stage of the proceeding. Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763; Bauman v. Ross, 167 U. S. 548, 590, 17 S. Ct. 966, 42 L. Ed. 270; Fallbrook

Irrigation District v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369.

The property owner is not entitled to a notice of every step in the proceedings. Voigt v. Detroit City, 184 U. S. 115, 22 S. Ct. 337, 46 L. Ed. 459. And, unless the assessment is arbitrary and unreasonable, the matter of the extent of the benefit is within the control of the local authorities. Mt. Saint Mary's Cemetery Ass'n v. Mullins, 248 U. S. 501, 39 S. Ct. 173, 63 L. Ed. 383, affirming 268 Mo. 691, 187 S. W. 1169; Hibben v. Smith, 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195; Standard Oil Co. v. State of Missouri, 224 U. S. 270, 32 S. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D, 936; Chicago, etc., R. R. v. Risty, 276 U. S. 567, 48 S. Ct. 396, 72 L. Ed. 703; St. Louis-San Francisco Ry. Co. v. Middlekamp, 256 U. S. 226, 41 S. Ct. 489, 65 L. Ed. 905.

In the instant case, notice of the hearing upon the petition and proposed articles of incorporation was given as provided by statute. Sections 4379 and 4380. It is complained that the limitation of scope prescribed deprived appellant of the opportunity to show why, as he thinks, his land should not be included in this drainage district. Since, as we shall see, a full hearing was afforded upon the question of benefits assessed against him, this notice of hearing of the application for incorporation need not have been provided by statute, but, if prescribed, it was clearly within the power of the Legislature to limit its scope. Appellant points out that the corresponding section of the revision of 1909 (section 5499) contained a provision that the landowner might show, in objecting to the organization and incorporation of the district, "why his land, or any part thereof, will not be benefited by the proposed drainage, or should not be embraced in said drainage district." This language was omitted in section 4380 of the Revision of 1919. We think this action is significant of the legislative purpose, in view of the law as declared in the cases above cited, and of the provision for hearing upon the question of benefits and damages contained in a later section, to free this procedure from what amounts to duplicate hearings upon the same subject matter. This action was well within the legislative power.

▮ As corollary to the preceding assignment, it is complained that, because of the limitation imposed upon the hearing of objections to the organization and incorporation of the district, appellant was deprived of the right to be heard upon the assessment

of the preliminary tax of fifty cents per acre provided by section 4387, R. S. Mo. 1919. We hold that this drainage district was properly organized under state law, and that there was nothing arbitrary in this prescribed rate for preliminary expenses in starting this public work. In such case this initial fixed tax per acre did not deprive appellant of his property without due process of law. Houck v. Little River District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266.

▮▮▮▮ 2. The second specification charges that this entire proceeding is void because, after the articles of association had been filed and notice of hearing had been given to the landowners of the district, 4,768.4 acres theretofore included within the boundaries of the district were excluded by amendment of the articles with consent of the court, as hereinabove recited, and the district was incorporated without a new notice and hearing. It must be conceded that all interested parties and lands were in court by notice given in accordance with statutory provision. The act provides that the articles of association may be amended as any other pleading. The action taken accords with established and customary court procedure. At the hearing upon the matter of incorporation, lands erroneously included may be eliminated. In re Mingo Drainage District, 267 Mo. 268, 183 S. W. 611; State, etc., v. Mississippi & Fox River Drainage District, 292 Mo. 696, 238 S. W. 446.

▮▮▮▮ 3. It is next contended that appellant is entitled to the equitable relief prayed, because, as he insists, his land will not be benefited, but will be injured, by its inclusion within this drainage district, and that taxing the land under such circumstances deprives appellant of his property without due process of law. We have already seen that the mere inclusion of appellant's land within the district does not deprive him of due process, if, at some stage of the proceeding, he is given an adequate hearing upon the question of benefits and damages. Such a hearing is provided by section 4392. Any landowner who feels aggrieved thereby may file exceptions to the report of the commissioners, or to any assessment of either benefits or damages, and such exceptions shall be heard by the court in a summary manner. If this action of the state circuit court be deemed judicial, it must be conceded that the hearing granted satisfies the demands of due process. But, if we assume, as we think we must, that, under the cited statutes, the report of the commissioners making the assessments, the filing of ex-

ceptions, and the action of the court upon these exceptions, taken together, form a part of the legislative or administrative procedure of the state in perfecting and carrying out the purposes of these drainage districts, then it is incumbent upon the landowner concerned to avail himself of the administrative remedy afforded by the state law. First National Bank of Greeley v. Board of Com'rs of Weld County, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784; Farncomb et al. v. City and County of Denver et al., 252 U. S. 7, 40 S. Ct. 271, 64 L. Ed. 424; Milheim v. Moffat Tunnel District, 262 U. S. 710, 43 S. Ct. 694, 67 L. Ed. 1194. Otherwise he cannot be heard to assert the invalidity of the assessment. Gorham Mfg. Co. v. Tax Commission, 266 U. S. 265, 45 S. Ct. 80, 69 L. Ed. 279; Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369; Stanley v. Supervisors, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000. This rule has been consistently declared by this court. Kansas City Southern Ry. Co. v. Ogden Levee Dist. (C. C. A.) 15 F.(2d) 637; Apartments Building Co. v. Smiley (C. C. A.) 32 F.(2d) 142; Nelson v. First Nat. Bank (C. C. A.) 42 F.(2d) 30.

▮▮▮▮ Appellant filed no exceptions to the report of the commissioners, although he had both constructive and actual notice of his privilege in this regard. Having failed and neglected to avail himself of the administrative remedy afforded, he cannot now be heard to assert the invalidity of the assessment in this proceeding. That was the time and place when and where the propriety of the assessment of benefits against his property should have been challenged. That challenge would necessarily have reached the entire question of benefits and damages. Appellant, having remained silent when it was his duty to speak, cannot now be heard.

But it is urged that the administrative remedy is not adequate and complete under section 4392, because, upon appeal from the judgment of the circuit court upon exceptions to the report of the commissioners, the questions to be determined are limited as follows:

"First, whether just compensation has been allowed for property appropriated, and, second, whether proper damages have been allowed for property prejudicially affected by the improvements."

▮▮▮▮ It is insisted that his grievance falls under neither of these heads, and, consequently, appellant is deprived of the benefit of appeal. It is to be suggested that, by his

failure to file exceptions, appellant may have neglected to frame issues of which the appellate court might take cognizance; but, however this may be, the right of appeal is not essential to due process of law. The right of review is statutory, and the Legislature may provide that a hearing before an administrative tribunal shall be final and conclusive, or may confine the review within prescribed limits. Hibben v. Smith, 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195; Standard Oil Co. v. State of Missouri, 224 U. S. 270, 32 S. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D, 936; Birmingham Drainage District v. Chicago, B. & Q. R. Co., 274 Mo. 140, 202 S. W. 404.

4. Finally, appellant insists that "this proceeding is illegal and void because no outlet is provided for the purported drainage system, and because appellees are proposing and attempting to collect the surface water over a large area and dump it upon land in the State of Kansas without any right, license, or authority so to do."

As bearing upon this question, the Missouri Valley drainage district embraces two main drainage ditches known as the "Kimsey Ditch" and the "Swope Creek Ditch." The former is designed to take care of flood waters over a large area, and to carry them directly into the Missouri river over a route lying entirely within the state of Missouri. The Swope Creek ditch is designed to collect and take care of casual surface water. It carries flood waters only incidentally. This ditch stops at the Kansas line, where it empties into an old ditch in the state of Kansas, which, as stated in the record, "runs back to the days of the Squaw Creek District"—a former drainage district which served a portion, at least, of this same territory. This Kansas ditch, which was dug in 1906, as appurtenant to the old Missouri Squaw Creek district, is described as 80 feet wide at the Kansas line, and continues at that average width for a mile or more. It has been the outlet for Missouri surface waters that have emptied into it for approximately twenty-four years. At a point about a mile from the Missouri line the waters escape over the surface of low ground. This point is about a mile from the Kimsey ditch, into which these waters from the Swope Creek ditch are designed to be carried. There is evidence that this ditch was dug along the natural course of drainage, and that the waters discharged by it find their way naturally through surface depressions into the Kimsey ditch. There is authority that such a depression or

drain may be a natural water course, although in part artificial. Hornor v. City of Baxter Springs, 116 Kan. 288, 226 P. 779; Freeman v. Weeks, 45 Mich. 335, 7 N. W. 904.

Although the record does not disclose whether this ditch was originally constructed with authority, it does appear that at least for twenty-four years it has been affording all outlet to the waters collected within the borders of this same Missouri territory, without objection or hindrance from any source. In view of the fact that the evidence tends strongly toward the conclusion that the waters carried by the Swope Creek ditch flow along natural lines of drainage, that the laws of both Missouri and Kansas are indulgent toward reclamation projects, and that the Kansas outlet into which the waters of the Swope Creek ditch are discharged has functioned in like manner for approximately a quarter of a century, without objection on the part of the state of Kansas, or its citizens, we incline to the view that the danger of interference by injunction or otherwise, which appellant apprehends would render this drainage system inoperative, is remote, if not entirely improbable. Besides, it appears from the record that, if such an emergency should arise, the Swope Creek ditch could be diverted to the Kimsey ditch within Missouri territory, without prohibitive interference with the beneficial operation of this reclamation plan.

We have referred thus at length to the practical effect of this specification upon the merits of the controversy in order that the situation presented might be more clearly understood; but we do not base our decision upon that situation. From the outset appellant, apparently not guided by the very able counsel who have represented him on this appeal, has studiously refused to avail himself of the administrative remedies provided by law, whereby, conceivably, his objections, if meritorious, might have been indulged. The practice of ignoring state tribunals, and of appealing to federal jurisdictions at later stages of the proceedings, has met with emphatic disapproval by the Supreme Court and by this court. We think the language of Mr. Justice Sutherland in First National Bank v. Board of Com'rs of Weld County, 264 U. S. 450, 456, 44 S. Ct. 385, 387, 68 L. Ed. 784, has application here:

"Plaintiff not having availed itself of the administrative remedies afforded by the statutes, as construed by the state court, it results that the question whether the tax is vul-

nerable to the challenge in respect of its validity upon any or all of the grounds set forth is one which we are not called upon to consider."

The judgment of the district court is accordingly affirmed.