## ROUNDS & PORTER LUMBER CO. v. LIVESAY, County Treasurer, et al.
### No. 808.

Circuit Court of Appeals, Tenth Circuit.
July 17, 1933.

R. M. Rainey, of Oklahoma City, Okl. (J. A. McCollum, of Pawnee, Okl., Frank G. Anderson, of Oklahoma City, Okl., J. Wirth Sargent, of Wichita, Kan., McCollum & McCollum, of Pawnee, Okl., and Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., on the brief), for appellant.

R. W. Stoutz, of Tulsa, Okl. (W. T. Cleeton, Co. Atty., and W. Lee Johnson, both of Pawnee, Okl., on the brief), for appellee.

Before LEWIS, and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

Appellant brought this suit to enjoin the tax officials of Pawnee County, Oklahoma, from assessing and collecting ad valorem taxes on stocks and bonds which were owned by it and held at its general office in Wichita, Kansas, during the several years in question. During appellant's ownership these stocks and bonds were never in the state of Oklahoma. The appellant is an Oklahoma corporation and is engaged in that state in the retail lumber business, having yards at some twenty-five or more places therein. It also conducts a retail lumber business in Kansas, having yards in eight different places there, and one yard in the state of Texas. As an Oklahoma corporation its domicil is at Pawnee City, Pawnee County, Oklahoma. None of its officers reside there. For many years they have all been at Wichita, and that is its headquarters where it conducts also the business of buying and selling lumber at wholesale. It retains at the places in the three states where it conducts a retail business only sufficient funds to carry on the business of the different yards, and as funds accumulate at those yards in amounts above the local requirements they are remitted to the office at Wichita out of which the company pays dividends, and when not needed for that purpose they are invested in stocks and bonds. Surplus funds accumulated in the wholesale business are mingled with funds received from retail yards and in that way used in purchasing the stocks and bonds here involved. No approximate percentage from each source is stated. It is alleged that the stocks and bonds thus held in Wichita and never taken into Oklahoma acquired a business and taxable situs in the state of Kansas, and were not taxable in the state of Oklahoma. That, it is alleged, would result in double taxation, thus denying to plaintiff equal protection of laws and the taking of property without due process in violation of the Fourteenth Amendment. But it is not alleged that the stocks and bonds have ever been assessed and taxed in the state of Kansas or that appellant has ever paid any taxes on them there. The years in controversy extend from 1910 to 1931, both inclusive, except the years 1913 and 1919 to 1925. It is also charged that the taxing officials taxed appellant's stocks and bonds at their face value, which is greater than their real value, whereas other personal property of like kind was assessed and taxed in said county at not to exceed 60% of its actual fair cash value, which constituted discrimination against complainant and deprived it of equal protection of laws.

The controversy came on in this way: Late in 1931 the Board of Commissioners of Pawnee County, acting under section 9798, Compiled Okl. St. 1921, employed a so-called tax ferret to assist the proper officers of Pawnee County in the discovery of property taxable in that county that had not been listed and assessed as required by law. The person so employed reported to the county treasurer a list of property that he had discovered, including the stocks and bonds in question, as subject to taxation for past years, which had not been listed and assessed. The county

treasurer gave appellant a hearing on the report and made an order that the stocks and bonds be listed for taxation and assessed. The appellant lumber company appealed to the county court as the Oklahoma statutes provide from the findings and order of the county treasurer, and the county court sustained the findings and order of the county treasurer. It did not appeal from the county court to the Oklahoma Supreme Court, as the state statute provided it might do, but instituted this suit in the United States District Court for the Northern District of Oklahoma.

Appellant exhibited the findings and order of the county judge by attaching a copy to the complaint. It alleged it had no full and adequate relief at law, that the stocks and bonds were not taxable in the state of Oklahoma, but were taxable only in the state of Kansas. Jurisdiction is based on the claim that to tax them in Oklahoma would violate appellant's right guaranteed by the Fourteenth Amendment to the Federal Constitution. There is no diverse citizenship.

The bill was dismissed on motion. The District Judge held that appellant had not exhausted its administrative remedy by taking an appeal from the decision of the county court to the Supreme Court of the state. Section 9799 provides that after the county court has acted an appeal may be taken by either party to the Supreme Court of the state within sixty days of the final judgment of the county court.

We had occasion to consider the provisions of the Oklahoma statute for listing and taxing omitted property in Ex parte State of Oklahoma (C. C. A.) 37 F.(2d) 862, and concluded that it provided an administrative remedy, that throughout it was neither an action at law nor a suit in equity, and, in effect, the administrative remedy must be exhausted before appealing to the courts in such matters. See First National Bank of Greeley v. Board of Com'rs of Weld County, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784, and our opinion in Kansas City Southern Ry. Co. v. Cornish et al. (C. C. A.) 65 F.(2d) 671. Also, the Supreme Court of Oklahoma in Matter of Earlsboro Gas Company's Assessment, 25 P.(2d) 632, held that it acted in an administrative capacity in a tax controversy brought to it on appeal under a statute in pari materia with the statute here under consideration.

Aside from objections to the assessments stated in the complaint, we doubt the right of Oklahoma to tax the stocks and bonds eo nomine. Compiled Oklahoma Statutes, Supplement 1926, § 9606 provides:

"All corporations organized * * * in this State, for profit [with certain exceptions] shall be assessed upon the value of their moneyed capital, surplus and undivided profits, as the same existed on the first day of January of each year, in the county, town, district or city where such corporation is located, less the assessed valuation of any real estate located in this state owned by such corporation and listed separately by such corporation."

The bill states that appellant corporation purchased the stocks and bonds with surplus funds, but it does not allege that it included them or their cost or value as surplus or undivided profits in its annual schedules of its taxable property. That subject and the claim that excessive valuations were made as compared with like property of others are essential elements of taxation and should have administrative adjustment where such relief has been provided. After that has been done the property owner can state the final action of the taxing power and the basis of his grievance.

■ Touching the merits of the bill of complaint—When it comes to ad valorem taxes on intangibles, the doctrine of mobilia sequuntur personam applies, with rare exceptions. Mr. Justice Brown speaking for the court in Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 38, 50 L. Ed. 150, 4 Ann. Cas. 493, said, after holding that tangible personal property was not ordinarily taxable beyond the jurisdiction of its situs:

"Respecting this, there is an obvious distinction between tangible and intangible property, in the fact that the latter is held secretly; that there is no method by which its existence or ownership can be ascertained in the state of its situs except, perhaps, in the case of mortgages or shares of stock. * * * In this class of cases the tendency of modern authorities is to apply the maxim mobilia sequuntur personam, and to hold that the property may be taxed at the domicil of the owner as the real situs of the debt. * * * Such have been the repeated rulings of this court. * * *

"The arguments in favor of the taxation of intangible property at the domicil of the owner have no application to tangible property. * * *

"There are doubtless cases in the state reports announcing the principle that the

ancient maxim of mobilia sequuntur personam still applies to personal property, and that it may be taxed at the domicil of the owner; but upon examination they all, or nearly all, relate to intangible property, such as stocks, bonds, notes, and other choses in action."

The rule thus announced as to the taxation of intangibles has often been referred to since by that court with approval. See Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; First National Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313. The pleader here tried to bring this case within claimed exceptions to the general rule by alleging that the stocks and bonds had acquired a business and taxable situs at Wichita in the state of Kansas, but it seems obvious from the allegations of the bill that they were purchased with surplus funds not needed at the time in appellant's business, and it is difficult to see how they would become associated with and a part of business activities carried on in Kansas and taxable there. Rather, they were independent transactions standing alone. About all that can be expected from a reasonably prudent person in making such investments is that under the circumstances the securities will be locked up for safe-keeping, and the proceeds used when they are sold or paid off as the owner may then choose. We are therefore constrained to the view that the bill presented no exception to the general rule. We think the stocks and bonds were taxable at appellant's corporate domicil in the state of Oklahoma, and that the bill does not disclose they were taxable elsewhere.

The statutes of Oklahoma (section 9583, C. O. S. 1921) provide that "money invested in bonds, stocks or credits outside of the State of Oklahoma," and "All shares in foreign corporations, owned by residents of this State" shall be subject to taxation. Wharton on Conflict of Laws (3d Ed.) vol. I, §§ 80a, 80c; Cooley—Taxation (4th Ed.) vol. I, §§ 223, 230, vol. II, § 556.

The complaint alleged that the acts of defendants in listing and assessing the stocks and bonds violated guarantees of the Federal Constitution. The gravamen of the charge is that those acts will result in double or duplicate taxation, or may so result. But there is no federal guarantee prohibiting double taxation. Swiss Oil Corp. v. Shanks, 273 U. S. 407, 413; 47 S. Ct. 393, 71 L. Ed. 709; Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558.

Affirmed.