José R. Oliver Aresti, etc., et al., Plaintiffs and Appellants, v. Rafael Sancho Bonet, Treasurer of Puerto Rico, substituted by Rafael Buscaglia, Defendant and Appellee.

No. 9115. Argued June 1, 1945.—Decided July 2, 1945.

*Eduardo Pérez Casalduc* for appellants. *Julio Suárez Garriga, Acting Attorney General,* and *J. Rivera Barreras, Deputy Attorney General,* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

On March 6, 1939, the plaintiffs, heirs of Andrés Oliver Roses, paid under protest the sum of $24,802.06, which, according to an assessment made by the Treasurer of Puerto Rico, should be paid by said heirs as inheritance tax.

On March 4, 1940, the plaintiffs brought, in the District Court of San Juan, an action praying that the Treasurer be ordered to return to them the sum of $8,219.24 alleged to have been unduly collected from them. In the complaint, as amended on April 9, 1941, it was alleged that the plaintiff

heirs were compelled to pay the sum claimed by the Treasurer by reason of the fact that they had been required by the District Court of Arecibo to file a proposal for the partition of the inheritance within a short and peremptory term, and the filing of a receipt showing the payment of the inheritance tax was a prerequisite for the approval of said partition; that the court itself directed the judicial administrator to make such payment under protest; that on the same day the payment under protest was made, the administrator served the Treasurer with notice of an appeal to the Board of Review and Equalization from the appraisal and assessment made, but the Treasurer refused to admit the appeal and the Board has refused to review the action of the Treasurer.

The plaintiffs alleged that in appraising the shares of stock held by the decedent, Andrés Oliver, in Central Cambalache, the Treasurer was guided solely and exclusively by their value as the same appeared from an examination of the corporate books without taking into account that during the period from January 10, 1936, to January 4, 1937, as shown by the Stock Transfer Book of Central Cambalache, Inc., some 2,339 shares had been transferred at an average price of less than $80 per share; that the very shares included in the inventory of the property owned by the decedent had been sold at public auction, with the consent of the Treasurer, in order to raise funds with which to pay the inheritance tax, and the same had been awarded to the highest bidder for the price of $80 per share; that on the basis of an appraisal of $80 per share, the value of the estate to be partitioned amounts to $249,384.45, and the tax to $15,049.07; that the tax which the plaintiffs owed amounted to $16,582.82, and therefore the Treasurer had unduly collected from them the sum of $8,219.24 which they sought to recover.

The Treasurer in his answer to the complaint alleged, in short, as follows:

1. That the payment effected by the plaintiffs was not made under protest but voluntarily; that no one had compelled them to pay the tax, for the only thing that the Treasurer did was to liquidate the tax without finally fixing the obligation to pay the same; that the plaintiffs could have appealed to the Board of Review and Equalization from the liquidation made by the Treasurer; that any payment made without first taking an appeal to said Board, is equivalent to a waiver of the right to appeal and the payment made under those circumstances is a voluntary payment; and, lastly, that no duty to pay the amount of the tax arises, or can arise, before the Board decides the appeal taken thereto.

2. That on December 2, 1939, the plaintiffs instituted, in the District Court of San Juan, a mandamus proceeding to compel the Treasurer and the Board of Review to take cognizance of an appeal which they alleged to have taken on March 6, 1939, from the appraisal and assessment made by the Treasurer in this case; and that said proceeding is now pending before the U. S. Circuit Court, on appeal from a judgment of the Supreme Court of Puerto Rico. (*Oliver* v. *Treasurer*, 58 P.R.R. 65.)

3. That on September 20, 1939, the plaintiffs filed with the Board a so-called notice of appeal, and that the Board never took any action in connection with the alleged appeal and confined itself to transferring it to the Court of Tax Appeals created by the Act of April 12, 1941 (No. 172, Laws of 1941, p. 1038), before which court said appeal is now pending.

4. That the district court had no jurisdiction of the action herein or over the person of the defendant.

5. That the facts alleged in the complaint were not sufficient to state a cause of action.

6. That according to Act No. 8 of April 19, 1927, the action brought was barred.

Finding that the plaintiffs had failed to resort previously to the Board of Review and Equalization and that the payment made by them on March 6, 1939, was voluntary and premature and not under protest, the district court rendered judgment dismissing the complaint for want of jurisdiction and imposing costs on the plaintiffs.

The appellants urge that the lower court erred (1) in holding that it lacked jurisdiction to take cognizance of the case, on the ground that the action had been commenced, under the provisions of Act No. 8 of 1927, "without first having exhausted the administrative remedies provided by § 7 of Act No. 99 of August 29, 1925, as amended by Act No. 72 of May 12, 1936"; (2) in holding that the payment of the tax was not made under protest; and (3) in not considering the evidence introduced by the parties.

Before entering into a consideration of the foregoing assignments, we must state that in the case of *Oliver* v. *Treasurer, supra,* between the same parties, we held that the power to order the return of taxes paid under protest was vested in the district courts and not in the Board of Review and Equalization; and that where an inheritance tax assessed by the Treasurer was paid under protest before taking an appeal to the Board of Review and Equalization, the right to appeal was thereby waived, since the Board was not empowered to order the return of the tax paid under protest. From our decision in said case, declaring that the issuance of a writ of mandamus against the Treasurer and the Board was not proper, the plaintiffs took an appeal to the United States Circuit Court of Appeals which was dismissed by that court on February 26, 1942.

The taxpayers having waived their right to appeal to the Board of Review and Equalization, we must consider the present case as one in which the taxpayer, after having made an alleged payment under protest, resorts directly to the district court praying for the return of the amount unduly collected from him.

The sole question for decision is whether the plaintiffs were entitled to resort directly to the district court before first exhausting the administrative remedy provided by the laws then in force.

██ Section 7 of Act No. 99 of August 29, 1925 (Laws of 1925, p. 790), entitled "An Act to modify and extend the inheritance tax," as amended by Act No. 72 of 1936 (Laws of 1936, p. 370), provides:

"Within thirty days after the completion of said appraisal and assessment of taxes, any person or beneficiary affected thereby, may appeal therefrom to the Board of Review and Equalization."

Said Act No. 99 of 1925 contains no provision requiring a payment under protest of an inheritance tax levied by the Treasurer as a condition precedent to the right to appeal to the Board of Review and Equalization. The taxpayers in this case, upon being notified, on March 1, 1939, of the appraisal and assessment made by the Treasurer, could have appealed to the Board of Review and Equalization within the thirty days following such notice, without the necessity of paying any amount whatever, such payment not being required by law. The plaintiffs erroneously, and without being legally bound to do so, paid the total amount fixed by the Treasurer as inheritance tax, and stated on the back of the receipt issued to them that the payment was made under protest; and after effecting said payment, they appealed to the Board of Review and Equalization. The payment made under those circumstances being a voluntary payment, it operated as a waiver of the right to appeal to the Board, *Oliver* v. *Treasurer, supra.*

██ Act No. 8 of April 19, 1927, entitled "An Act providing for the payment of taxes under protest, etc." (Laws of 1927, p. 122), contained the following provisions which we regard as material to the case under consideration:

Section 1 provided that "Whenever a taxpayer believes that he should not pay any tax or part thereof, he shall, however, be obliged to pay the tax in full upon request of

the collector of internal revenue of his district,'' and should he desire to make any claim, he ''shall ask the said collector . . ., on making payment, to endorse the tax receipt . . . stating . . . the said protest . . .''

Ever since the year 1905 this court, in *Guerra* v. *The Treasurer of Porto Rico*, 8 P.R.R. 280, laid down the doctrine that a taxpayer must exhaust the administrative remedy by appealing to the Board of Review and Equalization before he can resort to the judicial tribunals.

In *Ríos* v. *Richardson*, 24 P.R.R. 513, the plaintiff brought suit to recover taxes paid under protest. The district court sustained a demurrer to the complaint for insufficiency on the ground of a failure to allege therein that an appeal had been taken to the Board of Review and Equalization. The judgment of the district court was affirmed, and it was held that the act providing for the payment of taxes under protest did not repeal the Sections of the Political Code ($$ 308, 309, 310) whereby the Board of Review and Equalization was created; and that, consequently, a taxpayer who failed to apply for relief to the Board of Review and Equalization within the proper time could not pay the tax under protest and recover the same later in an action brought for that purpose.[1]

The decisions of the Federal and state courts hold that a taxpayer must exhaust the administrative remedies available to him under the law, by appealing to the boards empowered to review the assessment and imposition of taxes, before he can resort to the judicial tribunals.[2] When the

---

[1] Nothing said by this court in the cases of *La Correspondencia de Puerto Rico, Inc.* v. *Treasurer*, 58 P.R.R. 682, 686, and *Oliver* v. *Treasurer, supra,* should be interpreted in the sense that those cases have modified or overruled the decision of this court in *Ríos* v. *Richardson*, 24 P.R.R. 513, which we hereby confirm.

[2] *First National Bank of Greeley* v. *Board of County Commrs.*, 264 U.S. 450, 68 L. ed. 784; *Gorham Mfg. Co.* v. *State Tax Comm.*, 266 U.S. 265, 69 L. ed. 279; *Ward* v. *Alsup*, 46 S.W. 573; *Farmers Nat. Bank* v. *Board*, 8 S.W. (2d) 401 (Ky); *Apartments Bldg. Co.* v. *Smiley*, 32 F. (2) 142; *Washburn-Wilson Seed Co.* v. *Jerome County*, 138 Pac. (2d) 978.

Legislature has created a board with power to review and modify the taxes imposed by the Treasurer and has provided the procedure which must be followed by the taxpayer in order to obtain a review, the taking of an appeal to said board is a condition precedent to the right.which the taxpayer may have to resort to the judicial tribunals.

In the case at bar the taxpayers attempted to utilize the administrative remedy provided by § 7 of Act No. 99 of 1925, as amended by Act No. 72 of 1936, *supra,* by taking an appeal to the Board of Review. Nevertheless, the payment of the tax fixed by the Treasurer, made before the taking of the appeal and without the heirs being legally bound to effect said payment, operated as a waiver of the right to appeal to that Board.

The lower court did not err in dismissing the complaint for want of jurisdiction. The judgment appealed from should be affirmed.