**Gordon TAUB, Plaintiff–Appellant,**

v.

**COMMONWEALTH OF KENTUCKY, and Martha Layne Collins, in her official capacity as Governor of the Commonwealth of Kentucky, et al., Defendants–Appellees.**

No. 87–5245.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1987.

Decided March 29, 1988.

Kent Masterson Brown (argued), Greenebaum, Young, Treitz, Maggiola and Brown, Lexington, Ky., for plaintiff-appellant.

C. Kilmer Combs (argued), Wyatt, Tarrant and Combs, Lexington, Ky., for defendants-appellees.

Before LIVELY, Chief Judge, and JONES and GUY, Circuit Judges.

LIVELY, Chief Judge.

The question in this case is whether a state taxpayer has standing to bring a suit in federal court to enjoin a state, its governor, and other executive officers from expending state tax revenues for allegedly unconstitutional purposes. After considering cross-motions with supporting documents, and briefs and oral arguments of counsel, the district court entered judgment dismissing the taxpayer's action without prejudice. Since we agree that the plaintiff lacks standing, we affirm.

## I.

The facts are not in dispute. During the administration of the defendant Martha Layne Collins, former Governor of Kentucky, Toyota Motor Corporation (Toyota) determined to build a large automotive assembly plant in Scott County, Kentucky. As part of negotiations leading to this decision, Kentucky and Toyota entered into a contract by which the Commonwealth agreed to acquire land for the plant and to expend, or make available to Toyota, an amount not exceeding $20,000,000 for site preparation, engineering and improvements. The total cost to the Commonwealth was estimated at $35,000,000, and the improved site was to be conveyed to a designated affiliate of Toyota in fee simple at no cost. In return, Toyota agreed to construct an assembly plant at a cost of approximately $800,000,000 that would employ approximately 3,000 people.

The agreement provided that appropriate legislation would be submitted to the Kentucky General Assembly authorizing financing of the site acquisition and improvements by the issuance of revenue bonds of the Commonwealth. The agreement contemplated that the revenue bonds would be retired from "incremental taxes," defined as property taxes on the site, state corpo-

rate income taxes, state income taxes on employees at the Toyota plant, and other revenues received by the Commonwealth that exceeded taxes collected by the Commonwealth with respect to the project site in the fiscal year immediately preceding that in which construction of the facility commenced.

The required legislation was adopted by the General Assembly at its regular 1986 session, and the revenue bonds were issued and sold. The legislation provided as a condition precedent to the transfer of land to Toyota that the State Property and Buildings Commission make findings that the project was economically feasible and desirable. This requirement was satisfied by a study which calculated the incremental taxes resulting from the Toyota plant at approximately $13,200,000 per year. Following conveyance of the improved real property, Toyota began construction of the assembly plant.

## II.

The plaintiff is not a resident of Kentucky. However, he purchased land in the vicinity of the site in January 1986, when the general location of the Toyota plant was known, and in March and June 1986. He paid approximately $1200 in taxes on his Scott County property in 1986.

In his complaint, filed on August 17, 1986, plaintiff described the case as "a civil action arising under the Constitution of the United States," and based jurisdiction on 28 U.S.C. § 1331. The complaint alleged that the legislation authorizing the financing of the Toyota land purchase and improvements through state revenue bonds "and certain appropriations made for the benefit of Toyota" are unconstitutional as violating Article I, Section 10, and the Fifth and Fourteenth Amendments. The complaint sought a declaratory judgment that the legislation and appropriations are unconstitutional "on their face," and a permanent injunction prohibiting enforcement of the legislation and expenditure of any appropriations to amortize or pay debt service on the Toyota revenue bonds.

In connection with the Toyota project the Commonwealth condemned a right of way through a portion of the plaintiff's land.

However, the complaint made it clear that the plaintiff does not base this lawsuit on his status as a condemnee, but that he "brings the within action alleging the unconstitutionality of the exercise of the power of the Commonwealth of Kentucky and its agencies and officers to tax and spend monies raised by taxation under specific federal constitutional prohibitions, as a taxpayer of the Commonwealth of Kentucky." Later in the complaint he identified the constitutional basis of his claim by alleging that the action of the Commonwealth and various officials of the executive branch "amount to the taking of private property through taxation for other than a public purpose." At oral argument on the motions in the district court, counsel for the plaintiff acknowledged that he could not show any actual economic injury in the form of past or probable future tax increases.

## III.

Most of the case law pertains to standing of federal taxpayers, suing solely in that capacity, to seek injunctions against appropriations and expenditures of federal tax revenues. The seminal decision, *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), held that a taxpayer has no standing to sue for an injunction to prevent federal officials from enforcing a federal statute authorizing appropriations of public money. The taxpayer's claim appeared to be that "the effect of the appropriations complained of will be to increase the burden of future taxation and thereby take her property without due process of law." *Id.* at 486, 43 S.Ct. at 600. In denying standing, the Court stated:

We have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way

of the enforcement of a legal right. The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.

*Id.* at 488, 43 S.Ct. at 601.

The courthouse door remained tightly shut for federal taxpayer suits until the Supreme Court decided *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Noting the "impenetrable barrier" erected by *Frothingham,* Chief Justice Warren stated the issue in *Flast* as "whether the *Frothingham* barrier should be lowered when a taxpayer attacks a federal statute on the ground that it violates the Establishment and Free Exercise Clauses of the First Amendment." *Id.* at 85, 88 S.Ct. at 1944–45. The Court then undertook a "fresh examination" of limitations on standing to sue in federal court and how those limitations apply to taxpayer suits. *Id.* at 94, 88 S.Ct. at 1949.

The *Flast* Court emphasized that the focus in a standing dispute is on the person seeking to sue in federal court rather than on the issues that person seeks to litigate. *Id.* at 99, 88 S.Ct. at 1952. The Court then sought to determine "the circumstances under which a federal taxpayer will be deemed to have the personal stake and interest that impart the necessary concrete adverseness to such litigation so that standing can be conferred on the taxpayer *qua* taxpayer consistent with the constitutional limitations of Article III" (the "cases and controversies" requirement). *Id.* at 101, 88 S.Ct. at 1953. While emphasizing that justiciability of the substantive issues is not involved, the Court stated that it is appropriate to look at the substantive issues sought to be adjudicated in ruling on standing "to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated." *Id.* at 102, 88 S.Ct. at 1953. The Court concluded that whether a person suing solely as a federal taxpayer has standing to challenge the constitutionality of a federal spending program depends on whether the plaintiff can demonstrate the necessary stake as a taxpayer in the outcome of the litigation to satisfy the requirements of Article III. *Id.*

Applying two aspects of a "nexus" test, the Court determined that a federal taxpayer seeking to prevent the expenditure of federal revenues for activities that violate the Establishment Clause does have standing. The first aspect of the nexus test requires the taxpayer to establish a "logical link" between the status of taxpayer and the type of legislation he seeks to avoid. Under this test "a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taking and spending clause of Art. I, § 8, of the Constitution." *Id.* The second aspect requires the taxpayer to show that the challenged legislation exceeds specific constitutional limitations imposed on the taxing and spending powers of Congress, "and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." *Id.* at 103, 88 S.Ct. at 1954. As applied to the complaint in *Flast,* the first nexus test was satisfied because the constitutional challenge was "to an exercise by Congress of its power under Art. 1, § 8, to spend for the general welfare, and the challenged program involves a substantial expenditure of federal tax funds." *Id.* The second nexus test was satisfied by the allegation that the congressional enactment in question violated the command of the First Amendment that Congress "make no law respecting an establishment of religion," a specific limitation on Congress' taxing and spending power. The *Flast* Court concluded that the result in *Frothingham* was consistent with the two-part nexus test because the plaintiff in that case had satisfied the first nexus requirement by attacking a federal spending program, but had failed to establish the second step because she had not alleged that Congress violated a specific limitation on its taxing and spending power in enacting the Maternity Act. *Id.* at 104–05, 88 S.Ct. at 1954–55.

Although *Flast v. Cohen* appears to create a fairly narrow exception to the *Frothingham* rule, and may apply only to Establishment Clause cases (see concurring opinions of Justices Stewart and Fortas, 392 U.S. at 114 & 115, 88 S.Ct. at 1959 & 1960), we have discussed it at some length because it clearly has influenced all federal taxpayer standing cases since its release. *E.g., United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

More recently the Supreme Court has illustrated the narrowness of the *Flast* exception by finding that even a taxpayer who relied on an asserted violation of the Establishment Clause lacked standing. In *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), individual taxpayers sought to nullify the gift of surplus government property to a denominational college. Before addressing the specific case before it, the Court emphasized the Article III requirement of a "distinct and palpable injury" which must underlie every claim of standing to sue in federal court, describing this requirement as "a limitation on judicial power." *Id.* at 475, 102 S.Ct. at 760. It contrasted such claims with those of " 'generalized grievances,' pervasively shared and most appropriately addressed to the representative branches." *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975)).

The Court then found that the plaintiffs did not satisfy the first aspect of the *Flast* test because they attacked an action of the executive branch, not of Congress, and thus did not implicate the taxing and spending power. The Court also found that the plaintiffs had not alleged a sufficiently distinct and palpable injury to confer standing. The Court stated that the plaintiffs had not alleged "an *injury* of *any* kind, economic or otherwise, sufficient to confer standing," and added that plaintiffs' "claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of

governmental wrongdoing and to reveal their discoveries in federal court. The federal courts were simply not constituted as ombudsmen of the general welfare." *Id.* at 486–87, 102 S.Ct. at 765–66.

Although not a taxpayer suit, *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), must be taken into account as the Supreme Court's latest treatment of standing to sue in a federal court. In *Allen* parents of black school children sued to enjoin officials of the Internal Revenue Service from granting tax-exempt status to racially segregated private schools. The plaintiffs alleged that the practice of granting the exemptions to such schools harmed them directly and interfered with their children's opportunity to receive an education in desegregated public schools. The Court found that neither allegation of injury was sufficient to confer standing. The Court emphasized that the constitutional limitations on standing to sue in federal courts derive from the principle of separation of powers, stating that doctrines developed to elaborate upon the cases and controversies requirement are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Id.* at 750, 104 S.Ct. at 3324 (quoting *Warth v. Selden,* 422 U.S. at 498, 95 S.Ct. at 2205). Thus, the proper role of the courts in a scheme of government based in part on the separation of powers principle is preserved by a requirement, as a prerequisite to standing, that a person demonstrate a distinct and palpable injury that is personal to the would-be litigant. On the other hand, the Court "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Id.* at 754, 104 S.Ct. at 3326.

*Allen v. Wright* echoes the concerns expressed by Justice Powell, concurring in *United States v. Richardson:*

Relaxation of standing requirements is directly related to the expansion of judicial power. It seems to me inescapable that allowing unrestricted taxpayer or citizen standing would significantly alter

the allocation of power at the national level, with a shift away from a democratic form of government. I also believe that repeated and essentially head-on confrontations between the life-tenured branch and the representative branches of government will not, in the long run, be beneficial to either. The public confidence essential to the former and the vitality critical to the latter may well erode if we do not exercise self-restraint in the utilization of our power to negative the actions of the other branches.

418 U.S. at 188, 94 S.Ct. at 2952 (footnote omitted).

### IV.

There are very few decisions concerning standing of state taxpayers to sue in federal court where the Establishment Clause is not an issue. This is not the case with respect to municipal taxpayers. In *Frothingham* itself the Court stated that an injunction is appropriate to prevent misuse of municipal funds because the interest of a municipal taxpayer in the application of such funds is "direct and immediate." 262 U.S. at 486, 43 S.Ct. at 600. After reaching this conclusion, the Court distinguished the interest of a federal taxpayer:

> But the relation of a taxpayer of the United States to the Federal Government is very different. His interest in the moneys of the Treasury—partly realized from taxation and partly from other sources—is shared with millions of others; is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.

The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned. The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion which we have reached, that a suit of this character cannot be maintained.

*Id.* at 487, 43 S.Ct. at 601.

This court has recognized municipal taxpayer standing in a variety of cases. *E.g., Hawley v. City of Cleveland,* 773 F.2d 736 (6th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986) (municipal taxpayers had standing to challenge city's rental of space in a municipal airport to a religious organization for use as a chapel at less than market value); *Gwinn Area Community Schools v. State of Michigan,* 741 F.2d 840 (6th Cir.1984) (taxpayers of a school district had standing to challenge a formula for allocating federal impact funds that the plaintiffs alleged unduly shifted the tax burden to them). However, we have not previously addressed the issue of state taxpayer standing. Although the plaintiffs in *Americans United for Separation of Church and State v. School District of Grand Rapids,* 718 F.2d 1389 (6th Cir.1983), *aff'd sub nom. Grand Rapids School District v. Ball,* 473 U.S. 373, 105 S.Ct. 3248, 87 L.Ed. 2d 288 (1985), challenged a state-authorized shared time program in the Grand Rapids schools, they sued as taxpayers of the school district as well as of the State. Further, the case involved a challenge under the Establishment Clause, and the Supreme Court noted numerous cases in which it has "adjudicated Establishment Clause challenges by state taxpayers to programs for aiding nonpublic schools." 473 U.S. at 380 n. 5, 105 S.Ct. at 3221 n. 5. This observation points up the distinctive treatment of standing when the Establishment Clause is involved, but does not indicate any rule with respect to other state taxpayer suits.

*Doremus v. Board of Education,* 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), was a state taxpayer action which antedated *Flast v. Cohen* and involved an Estab-

lishment Clause claim. The plaintiffs sued as citizens and taxpayers of New Jersey and one of its townships and a borough. They sought a declaratory judgment that a New Jersey statute providing for Bible reading at the opening of each public school day was unconstitutional. The case was brought in state court and reached the Supreme Court as an appeal from the Supreme Court of New Jersey, which had decided the case on its merits. The Supreme Court concluded, however, that it lacked jurisdiction because the plaintiffs had failed to allege any direct injury to themselves. Relying upon, and quoting from, *Frothingham*, the Court stated:

> Without disparaging the availability of the remedy by taxpayer's action to restrain unconstitutional acts which result in direct pecuniary injury, we reiterate what the Court said of a federal statute as equally true when a state Act is assailed: "The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."

Id. at 434, 72 S.Ct. at 397. The Court determined that the "case or controversy" requirement of Article III limits the jurisdiction of federal courts to taxpayer suits that are "good-faith pocketbook action[s]." *Id.* Thus, the Court applied the *Frothingham* requirement that a taxpayer allege a direct injury as a prerequisite for standing when either state or federal use of public funds is challenged in federal court.

The Supreme Court decided one state taxpayer suit not involving the Establishment Clause between *Frothingham* and *Flast*. In *Williams v. Riley,* 280 U.S. 78, 50 S.Ct. 63, 74 L.Ed. 175 (1929), state taxpayers sought an injunction in federal court to prohibit the enforcement of California's motor vehicle fuel tax laws that imposed a tax of three cents per gallon on gasoline. The plaintiffs' theory was that the effect of the statutes was to deprive all purchasers of gasoline of property without due process of law. In denying standing, the Court relied directly on *Frothingham*, quoting from that decision as follows:

> *Frothingham v. Mellon, Sec'y of the Treasury,* 262 U.S. 447, 487, 488 [43 S.Ct. 597, 601, 67 L.Ed. 1078], announces the applicable doctrine.
>
> "The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of inidividual concern."
>
> The federal courts have no power *per se* to review and annul acts of state legislatures upon the ground that they conflict with the federal or state constitutions. "That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act."

*Id.* at 80, 50 S.Ct. at 63–64.

### V.

We conclude that the requirements for federal taxpayer standing announced in *Frothingham* control the issue of state taxpayer standing, at least in those cases where violation of the Establishment Clause is not alleged. The rule upholding municipal taxpayer standing appears to rest on the assumption that the relatively small number of taxpayers involved and the close relationship between residents of a municipality and their local government results in a direct and palpable injury whenever tax revenues are misused. Whatever the validity of that assumption with respect to the largest cities today, we believe it has no force when a state is the defendant and the plaintiffs sue as state taxpayers. In order to have standing, a state taxpayer must allege direct and palpable injury with sufficient specificity to meet the "good-faith pocketbook" requirement of *Doremus.*

We respectfully disagree with the court's conclusion in *Hoohuli v. Ariyoshi,* 741 F.2d 1169 (9th Cir.1984). The court in *Hoohuli* found that "[t]he pleadings set forth with specificity amounts of money

appropriated and spent for allegedly unlawful purposes," and that this satisfied the *Doremus* requirement. *Id.* at 1180. We believe more is required. A state taxpayer-plaintiff must tie such allegations of illegal appropriations and expenditures to a specific claim of some direct and palpable injury threatened or suffered. *Doremus* did not eliminate this requirement; in fact, the Court in *Doremus* emphasized it by quoting *Frothingham* concerning direct injury and the requirement that a taxpayer-plaintiff allege more than "merely that he suffers in some indefinite way in common with people generally." 342 U.S. at 434, 72 S.Ct. at 396.

We agree with the dissent in *Hoohuli*. As recent Supreme Court decisions have made clear, the restrictions on federal taxpayer standing prevent unwarranted intrusions by the courts into matters entrusted to the legislative and executive branches of the federal government. This separation of powers concern has a counterpoint which should be considered when a state taxpayer seeks to have a federal court enjoin the appropriation and spending activities of a state government. Considerations of federalism should signal the same caution in these circumstances as concern for preservation of the proper separation of powers in an "all federal" action. Judge Wallace stated our concern quite clearly in his dissenting opinion in *Hoohuli:*

> *Doremus* requires a state taxpayer plaintiff to demonstrate "a good-faith pocketbook action," 342 U.S. at 434, 72 S.Ct. at 397, which appears to parallel the core article III injury-in-fact requirement. *See Allen* [*v. Wright* ] [468] U.S. [737] at [750], 104 S.Ct. [3315] at 3324 [82 L.Ed.2d 556 (1984) ]. But when State taxpayers attack state spending in federal court, another major consideration operates: the integrity of our government's federalist structure. Unnecessary or abstract decisions by federal courts in cases where there is no case or controversy could unduly constrict experimental state welfare legislation and undermine local self-determination.

741 F.2d at 1183.

■ In his complaint in the present case the plaintiff described the defendant, Commonwealth of Kentucky, as "a sovereign State of the United States." Congress has recognized that a state's power of taxation is a basic attribute of sovereignty by enacting the Tax Injunction Act, 28 U.S.C. § 1341 (1982). A sovereign must have the authority to determine how tax revenues are to be spent, or the power to tax is illusory. Thus, state sovereignty extends to the total conduct of a state's fiscal affairs. As the court stated in *Dawson v. Childs,* 665 F.2d 705, 709 (5th Cir.1982):

> Under our federalist system, the state governments no less than the federal government possess certain unalienable powers that the other may not encroach upon. *See generally National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Of all such areas, the field of state taxation is perhaps the most important. The Supreme Court early recognized the need for judicial restraint in matters involving a state's fiscal affairs. *First National Bank v. Board of County Commissioners,* 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924).

In this case the plaintiff presented a generalized claim of injury, admitting that he was neither threatened with nor had suffered a direct and individual injury not shared by all taxpayers of Kentucky. His allegations were not sufficient to permit him to pursue a federal court injunction. Whatever the merits of his claim, and their justiciability in a state forum, he lacks standing to bring this action.

The judgment of the district court is affirmed.