# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2986

_____

| | | |
|---|---|---|
| James Tarsney, Joe Loeffler, Wayne Olhoft, Tad Jude, Dr. Steve Calvin, Dr. Karen Karn, Dr. Konald Prem, Dr. Stanley Johnson, Brian Gibson, Jack Weiland, Russ Rooney, Mary Rooney, David Racer, Eugene Keating, Joseph Kueppers, John C. Cerrito, David States, Mary Kay States, Keith Jensen, Elizabeth Jensen, Roberta Becker, Linda Pettman, Karen Messicci, Angela Heithaus, Renae Lavoi, Cheri Emde, Mary Jacobs, Judy Hadley, Beth Gerlach, Mitzi Speranzella, Joan Appleton, Becky Saad, Marlene Reid, Bernadine Scroggins, Dr. Paul Spencer, Judi Spencer, Virginia Benyon, Jenifer Latawiec, Maria Schmitz, Barbara (Basia) Zebro, Cletus Tauer, Ramona Tauer, Peg Cullen, Meghan Jones, Mary Prior, Ruth Powers, Jolene Schmitz, | * * * * * * * * * * * * * * * * * * * * * * * * | Appeal from the United States District Court for the District of Minnesota. |
| Plaintiffs-Appellants, | * * | |
| v. | * * | |
| Michael O'Keefe, Commissioner, Department of Human Services, State of Minnesota, | * * * * | |
| Defendant-Appellee. | * | |

_____

The Roman Catholic Archdiocese, of     *
St. Paul and Minneapolis; American     *
Center for Law and Justice; The        *
Knights of Columbus, St. Louis Park     *
Council #3949, Inc.; Members of the     *
Minnesota Legislature; Minnesota       *
Lawyers for Life,                       *
                                        *
        Amici on Behalf of Appellants.     *
                            _____

                Submitted: June 15, 2000
                    Filed:  September 11, 2000
                            _____

Before MURPHY, HEANEY, and MAGILL, Circuit Judges.
                            _____

MURPHY, Circuit Judge.

        This case was brought by forty-seven individuals seeking declaratory and injunctive relief against the State of Minnesota, the Minnesota Department of Human Services, and Commissioner Michael O'Keefe, including enjoining them from using state funds to pay for certain abortions for low income women. State funds have been used for these abortions since the Minnesota Supreme Court overturned a state statutory scheme which authorized state spending on medical services related to childbirth but prohibited it for therapeutic abortions. In this case the plaintiff taxpayers allege that use of state money for abortions infringes upon the free exercise of their

religion. The district court[1] dismissed the case for lack of standing. The plaintiffs appeal, and several amicus briefs have been submitted in support.[2] Because the appellants have not established standing, the federal court is without jurisdiction to reach the merits of the issues raised in their complaint, and we affirm its dismissal.

I.

Many issues relating to the provision of abortion services have been legislated and litigated since the Supreme Court recognized a constitutional right to abortion in Roe v. Wade, 410 U.S. 113 (1973), and a number have related to the use of public funds for abortions. Since September 1976, Congress has prohibited the use of federal funds to reimburse the cost of abortions under Medicaid except under certain limited circumstances. See Harris v. McRae, 448 U.S. 297, 302 (1980). This federal policy is commonly known as the Hyde Amendment after its original sponsor, Representative Henry Hyde, and it is effected by means of an amendment to the annual appropriations bill for the Department of Health and Human Services or by a joint resolution. See id. The Minnesota legislature restricted state funding for abortion services in 1987 when it passed laws prohibiting two Minnesota health care programs for indigent persons (the Medical Assistance Program (MA) and the General Assistance Medical Care Program (GAMC)) from using state funds to pay for abortion services.[3] See Minn. Stat. Ann.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

[2]Amicus briefs have been submitted by the Roman Catholic Archdiocese of St. Paul and Minneapolis; American Center for Law and Justice; The Knights of Columbus, St. Louis Park Council #3949, Inc.; Members of the Minnesota Legislature; and Minnesota Lawyers for Life.

[3]The MA program is a joint federal-state program created under Title XIX of the Social Security Act and is known as Medicaid at the federal level; Minnesota issues payments for services and then receives partial reimbursement from the federal

§ 256B.0625, subd. 16; § 256D.03, subd. 4(j).

These Minnesota statutory restrictions on public funding for abortions for low income women were challenged in state court by a class of individual women, several abortion providers, and an abortion funding agency. See Doe v. Gomez, 542 N.W.2d 17 (Minn. 1995). The plaintiffs in Doe had alleged that the funding restrictions impermissibly infringed a woman's right to privacy in violation of Article I, Sections 2, 7, and 10 of the Minnesota constitution, and the Minnesota Supreme Court agreed. See id. at 26, 32. The court chose not to interpret the state constitution as narrowly as the federal Constitution had been read in Harris v. McRae, 448 U.S. 297 (1980), where the Supreme Court held that the Hyde restrictions on federal abortion funding did not violate any substantive rights in the federal Constitution. The Minnesota court stated that it had "long recognized that [it might] interpret the Minnesota Constitution to offer greater protection of individual rights than the U.S. Supreme Court has afforded under the federal constitution." Doe, 542 N.W.2d at 30. The court noted that a "substantial majority" of state courts that had addressed a similar issue had construed their state constitutions to provide greater protection for individual liberty for abortion services than that provided by the United States Constitution. Id. at 28.[4] Minnesota has

_____

government. See Minn. Stat. Ann. § 256B.22 (1998). The federal Medicaid program prohibits Minnesota, through the inclusion of the Hyde Amendment in annual appropriations, from using federal funds under its MA program to pay for abortion services unless the pregnancy resulted from rape or incest or unless it threatens the woman's life. The GAMC program is completely funded by the state and reimburses medical services for indigent persons who do not qualify for MA. See Minn. Stat. Ann. § 256D.02, subd. 4a; § 256D.03, subd. 3 (1998).

[4]The Minnesota Supreme Court cited cases from courts in California, Connecticut, Illinois, Massachusetts, Montana, New Jersey, New Mexico, Oregon, and West Virginia that had reached similar results. See Doe, 542 N.W.2d at 28-29 n.12. In the time since Doe was decided several other state cases have been decided similarly. See, e.g., Renee B. v. Florida, 756 So.2d 218, 221 n.2 (Fla. Dist. Ct. App.

subsequently paid for therapeutically necessary abortion services in circumstances where federal funding is unavailable because of the Hyde Amendment.

In this case the appellants seek to challenge state expenditures for abortions, as well as the validity of the Minnesota Supreme Court's Doe decision. In their complaint they alleged standing as state taxpayers to raise several claims. They alleged that the use of state funds for abortions violates their state and federal rights to the free exercise of religion; that the appellees are unconstitutionally using public funds for private purposes; that state payment for abortion services beyond those allowed by the Hyde Amendment violates the Privileges and Immunities Clause of the federal constitution; and that Doe v. Gomez is invalid under the state and federal constitutions because of the absence of a case or controversy and that it violated the state constitution separation of powers requirement. The appellants seek a declaration that Doe is void, an injunction prohibiting the state from using public funds to pay for abortion services beyond those allowed by the Hyde Amendment, and a refund of the amount of their taxes used to fund abortion services. Most of the appellants identified themselves as members of religious groups opposed to abortion.[5] Two of them, Wayne Olhoft and Tad Jude, were identified as former Minnesota state legislators.

The state parties moved to dismiss the complaint on several grounds. They argued that the appellants had only alleged standing to bring their Free Exercise Clause

2000) (citing Planned Parenthood v. Perdue, No. 3AN 98-7004 CI, slip op. (Alaska Super. Ct. Mar. 16, 1999); Roe v. Harris, No. 96977, slip op. (Idaho Dist. Ct. Feb. 1, 1994)).

[5]The appellants belong to groups that include Minnesota Lawyers for Life, the Roman Catholic Church, the Lutheran Church, Pro Life Action Ministries, the Minnesota Family Council, Project Life, Human Life Alliance of Minnesota, Inc., Pro Life Nurses, and Minnesota Natural Family Planning.

claim so any other claims should be dismissed and that taxpayer standing was not available to raise a claim under the Free Exercise Clause. The appellants argued in response that they should have taxpayer standing to sue under the Free Exercise Clause just as they might raise an Establishment Clause claim. The district court concluded that the appellants lacked taxpayer standing and granted the motion to dismiss.

Appellants argue again on appeal that they have standing as state taxpayers to bring a Free Exercise Clause challenge to the use of state funds to pay for medically necessary abortions for MA- and GAMC-eligible persons. They also now contend that they have standing under the Civil Rights Act, 42 U.S.C. § 1983, and the Hyde Amendment and as state legislators. The state parties respond that state taxpayer standing is not available for Free Exercise Clause claims, that the appellants did not properly plead any alternative standing grounds, and that the suggested grounds would not confer standing here even if they had been raised.

We review a decision dismissing a complaint for lack of standing de novo, "construing the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff." Burton v. Central Interstate Low-Level Radioactive Waste Compact Comm'n, 23 F.3d 208, 209 (8th Cir.), cert. denied, 513 U.S. 951 (1994); see Warth v. Seldin, 422 U.S. 490, 501 (1975).

II.

Standing is "the threshold question in every federal case . . . ." Warth, 422 U.S. at 498. Federal court jurisdiction is "defined and limited by Article III of the Constitution . . . [and] is constitutionally restricted to 'cases' and 'controversies'." Flast v. Cohen, 392 U.S. 83, 94 (1968). A case or controversy exists only if a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979). If a plaintiff has not suffered an injury, there is no standing and the

court is without jurisdiction to consider the action. See Allen v. Wright, 468 U.S. 737, 750-66 (1984).

The appellants allege that the use of state funds to pay for abortions violates their Free Exercise Clause rights because a portion of their tax revenue is being used to fund abortions, a practice that they oppose on moral and religious grounds. They argue that standing analysis for taxpayers should be the same for claims brought under either the Establishment Clause or the Free Exercise Clause because there is "no heirarchy of constitutional values." They urge this court to expand the holding in Flast v. Cohen, 392 U.S. 83 (1968), in which the Supreme Court recognized taxpayer standing to raise Establishment Clause claims because that clause "specifically limit[s] the taxing and spending power conferred by Art. I, § 8." Id. at 105. In that case the Supreme Court left open the question of whether there could ever be taxpayer standing to raise Free Exercise Clause claims. See id. at 104 n.25.

The First Amendment, which has been applied to the states through the Fourteenth Amendment, see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides in relevant part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Even though the two religion clauses are found in the same sentence of the First Amendment, there is a clear distinction between them. See Walz v. Tax Comm'n of New York, 397 U.S. 664, 667-72 (1970). The Supreme Court has pointed out that "[a]lthough these two clauses may in certain instances overlap, they forbid two quite different kinds of governmental encroachment upon religious freedom. The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce nonobserving individuals or not." Engel v. Vitale, 370 U.S. 421, 430 (1962). The Free Exercise Clause, by contrast, protects the right of citizens to exercise religious beliefs free of any governmental interference or restraint. See School Dist. of Abington Township v. Schempp, 374 U.S. 203, 222

(1963).  Its protections "pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons,"  Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993), and it is not violated in the absence of a "showing of direct governmental compulsion," see Engel, 370 U.S. at 430.

Laws of general applicability with only an incidental effect on religion do not violate the Free Exercise Clause.  See City of Boerne v. Flores, 521 U.S. 507, 513-14 (1997); Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 878-80 (1990).  The Supreme Court has instructed that "the right of free exercise [of religion] does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'"  Smith, 494 U.S. at 879 (quoting United States v. Lee, 455 U.S. 252, 263 n. 3 (1982) (Stevens, J., concurring)).  A variety of generally applicable federal and state laws apply to religious organizations and their members.  As the Court explained in holding that Amish plaintiffs were not entitled to exemption from paying social security taxes:

> [I]t would be difficult to accommodate the comprehensive social security system with myriad exceptions flowing from a wide variety of religious beliefs. . . . . There is no principled way . . . to distinguish between general taxes and those imposed under the Social Security Act.  If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax. The tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief.  Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax.

Lee, 455 U.S. at 259-60 (citations omitted); see also Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 698-700 (1989) (Internal Revenue Code); South Ridge

-8-

Baptist Church v. Industrial Comm. of Ohio, 911 F.2d 1203, 1206-10 (6th Cir. 1990), cert. denied, 498 U.S. 1047 (1991) (workers compensation); Dole v. Shenandoah Baptist Church, 899 F.2d 1389, 1397-99 (4th Cir.), cert. denied, 498 U.S. 846 (1990) (minimum wage laws); EEOC v. Tree of Life Christian Schs., 751 F. Supp. 700, 709-13 (S.D. Ohio 1990) (Equal Pay Act). Appellants have not contested their obligation to pay taxes, and citizens may not opt out of paying general taxes. See Lee, 455 U.S. at 260; Tilton v. Richardson, 403 U.S. 672, 689 (1971); cf. Smith, 494 U.S. at 879.

Because the two clauses require different things from the government in its interaction with religion, they are not analyzed in the same way for purposes of taxpayer standing. When the government spends public money in violation of the Establishment Clause, a taxpayer suffers a direct injury because the government is improperly promoting religion. See Flast, 392 U.S. at 114 (Stewart, J., concurring) ("Because [the Establishment Clause] plainly prohibits taxing and spending in aid of religion, every taxpayer can claim a personal constitutional right not to be taxed for the support of a religious institution."). The clause operates as a specific limitation on Congress' taxing and spending power, see id. at 105-06, and standing therefore exists for citizens whose taxes are expended to finance instruction in religious schools or for textbooks and materials used in them, for example, see id. at 85-86.

The Free Exercise Clause on the other hand is a constitutional guarantee of non interference by the government with religious practice. See Tilton, 403 U.S. at 689. It follows that when the government appropriates public funds, it is not doing anything the Constitution prohibits unless the expenditure directly prevents an individual from exercising religious beliefs. If there were direct interference, such as use of public funds to prevent members of a religious group from voicing their opposition to abortion, standing would exist for a church member on the basis of direct injury. A taxpayer who was not affected by the allegedly unconstitutional expenditure would not have taxpayer standing to challenge the expenditure, however. See Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 223 n.13 (1974) (Article III standing requirements not

satisfied by "the abstract injury in nonobservance of the Constitution asserted by . . . citizens"). The general principle is that a Free Exercise Clause injury does not arise from the expenditure itself, but from the resulting limitation on religious exercise. The Free Exercise Clause does not operate as a specific limitation on the taxing and spending power of Congress which the Supreme Court discussed in Flast, and taxpayers do not have standing to bring claims under it unless they can show direct injury.

The concurring opinions by Justices Stewart and Fortas highlighted the limited nature of the taxpayer standing permitted by the Flast decision, and the Court's subsequent discussions of Flast are consistent with their statements of the holding.[6] See, e.g., Bowen v. Kendrick, 487 U.S. 589, 618-20 (1988); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 476-82 (1982); United States v. Richardson, 418 U.S. 166, 176-80 (1974); Schlesinger, 418 U.S. at 227-28. The Court could have easily recognized taxpayer standing to raise Free Exercise Clause claims in Flast if it had wished because the plaintiffs there had pleaded standing under both religion clauses. The Court instead chose not to address the issue since the Establishment Clause claim "was sufficient to establish the nexus between their [taxpayer] status and the precise nature of the constitutional infringement alleged . . . ." Flast, 392 U.S. at 104 n.25. The Court cautioned that while it had

---

[6]See Flast, 392 U.S. at 114 (Stewart, J., concurring) ("I join the judgment and opinion of the Court, which I understand to hold only that a federal taxpayer has standing to assert that a specific expenditure of federal funds violates the Establishment Clause . . . ."); see id. at 115-16 (Fortas, J., concurring) ("I would confine the ruling in this case to the proposition that a taxpayer may maintain a suit to challenge the validity of a federal expenditure on the ground that the expenditure violates the Establishment Clause. . . . There is no reason to suggest, and no basis in the logic of this decision for implying, that there may be other types of congressional expenditures which may be attacked by a litigant solely on the basis of his status as a taxpayer. . . . The status of taxpayer should not be accepted as a launching pad for an attack upon any target other than legislation affecting the Establishment Clause.").

previously recognized that use of the taxing power could infringe the free exercise of religion, it had done so only in a case involving a tax that "operated upon a particular class of taxpayers." See id. (citing Murdock v. Pennsylvania, 319 U.S. 105 (1943) (state license fee that is a condition to distributing religious literature violates Free Exercise Clause)).

The Court pointed out in its decision in Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 476-82 (1982), that it had recognized only a limited exception in Flast where there could be taxpayer standing. Were it to confer standing on the Establishment Clause basis sought in Valley Forge, which did not relate to the congressional taxing and spending power, "there would be no principled basis for confining our exception to litigants relying on the Establishment Clause." Valley Forge, 454 U.S. at 489. It declined to expand the exception and stated that "[a]ny doubt that once might have existed concerning the rigor with which the Flast exception to the Frothingham principle ought to be applied should have been erased by this Court's recent decisions in United States v. Richardson and Schlesinger v. Reservists Comm. to Stop the War." Id. at 481 (citations omitted) (cases not addressing the taxing and spending power). Several years later the Court was equally explicit: "Although we have considered the problem of standing and Article III limitations on federal jurisdiction many times since [Flast], we have consistently adhered to Flast and the narrow exception it created to the general rule against taxpayer standing established in Frothingham v. Mellon, 262 U.S. 447 (1923)." Bowen, 487 U.S. at 618.

Federal appellate courts have followed the Supreme Court's lead in refusing to expand the exception adopted in Flast. See, e.g., Minnesota Fed. of Teachers v. Randall, 891 F.2d 1354, 1358 (8th Cir. 1989) ("We believe that taxpayer standing was created to specifically permit the airing of establishment clause claims . . . ."); Colorado Taxpayers Union, Inc., v. Romer, 963 F.2d 1394, 1399 (10th Cir. 1992), cert. denied, 507 U.S. 949 (1993) ("[T]he Court has indicated that Flast applies only to cases in

which a federal taxpayer challenges a congressional appropriation made pursuant to Article I, Section 8 that allegedly violates the Establishment Clause of the First Amendment."); Rocks v. City of Philadelphia, 868 F.2d 644, 649 (3d Cir. 1989) ("Flast and Bowen are extremely limited holdings. They hold that federal taxpayers have standing to raise establishment clause claims against exercises of congressional power under the taxing and spending power of article I, section 8 of the constitution."); Taub v. Kentucky, 842 F.2d 912, 916 (6th Cir.), cert. denied, 488 U.S. 870 (1988) ("Flast v. Cohen appears to create a fairly narrow exception to the [rule against taxpayer standing], and may apply only to Establishment Clause cases . . . ."); Grove v. Mead Sch. Dist. No. 354, 753 F.2d 1528, 1531-32 (9th Cir.), cert. denied, 474 U.S. 826 (1985) (no standing to raise Free Exercise Clause claim where only identified interest is taxpayer status).

The requirement to show a direct injury for free exercise standing comports with the bedrock notion that federal court jurisdiction is limited by separation of powers concerns to "cases" and "controversies." U.S. Const. art. III; see Valley Forge, 454 U.S. at 471-72 ("Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies,' " and "[a]s an incident to the elaboration of this bedrock requirement, [the Supreme Court] has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit."). Allowing state taxpayers to litigate claims of unconstitutional expenditures without having to show a direct injury would "seriously undermine the constitutional commitment to federalism." Colorado Taxpayers Union, Inc., 963 F.2d at 1403. If taxpayers were granted standing to challenge state expenditures without demonstrating a direct injury, the ability of states to govern could be seriously impeded. For example, plaintiffs could sue on the basis of religious beliefs to challenge state funding for executions, stem cell research, civil unions, or various civil rights laws. Aggrieved individuals always have the option to take their concerns about expenditures to the political branches of government, but Article III controls whether the concerns can be addressed in federal court.

-12-

Here appellants must identify a direct injury they have experienced from state interference in order to have standing to raise their Free Exercise Clause claim. See Schempp, 374 U.S. at 224 n.9 (requirements for standing to challenge state action under the Free Exercise Clause include "proof that particular religious freedoms are infringed"); Colorado Taxpayers Union, Inc., 963 F.2d at 1401 (plaintiff must show that the allegedly unconstitutional expenditure is "tied to a direct and palpable injury threatened or suffered" in order to secure standing). The injury cited in appellants' complaint is requiring them "to support abortion" with their taxes which "is not only noxious to [their] beliefs but also sinful according to their religious faith." Compl. at 13, ¶ 64. They cite no case in which a court has recognized a perceived moral injury to be the type of direct injury which can confer standing. As the Supreme Court has explained, plaintiffs do not have standing if they do not

> identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms. . . . [S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy.

Valley Forge, 454 U.S. at 485-86 (emphasis in original); see also Allen, 468 U.S. at 755 (no standing to litigate claims based on stigmatizing injury caused by racial discrimination unless plaintiff personally has been denied a benefit).

We conclude that the appellants do not have taxpayer standing to bring their Free Exercise Clause claim challenging the expenditure of state funds for abortions for low income women and that they have not demonstrated a direct injury sufficient to confer standing.

III.

The appellants also contend that they pleaded alternative grounds for standing beyond that as taxpayers. They say they have standing under the Civil Rights Act, 42 U.S.C. § 1983, under the Hyde Amendment, and as state legislators. The appellees argue that it would be improper to consider these theories because they were not raised before the district court and that they would not confer standing in any event.

We generally decline to address arguments raised for the first time on appeal, see United Waste Sys. of Iowa, Inc. v. Wilson, 189 F.3d 762, 768 n.4 (8th Cir. 1999), but we may decide to do so "where the proper resolution is beyond any doubt . . . or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1314-15 (8th Cir. 1991) (internal quotations and citations omitted). It is well established that the Civil Rights Act, 42 U.S.C. § 1983 (1994), cannot confer standing. The statute does not itself create substantive rights, but "merely provides remedies for deprivations of rights established elsewhere." City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985). Standing must be established on another basis before a section 1983 claim can proceed. See, e.g., Warth, 422 U.S. at 518. Appellants contend that they have standing through section 1983 to enforce the Medicaid statute, as amended by the Hyde Amendment, but they are not the intended beneficiaries of the amendment since they are not seeking reimbursement or medical services. Cf. Little Rock Family Planning Servs., P.A. v. Dalton, 60 F.3d 497, 501-02 (8th Cir. 1995), rev'd in part on other grounds, 516 U.S. 474 (1996). Even if the appellants could show they were beneficiaries of the Hyde Amendment, it only concerns the expenditure of federal funds and they have not suggested that Minnesota has misspent any such funds. Two appellants, Wayne Olhoft and Tad Jude, also contend that they have standing as former state legislators based on their legislative involvement with the statutes overturned in Doe. The general rule is that when "a court declares an act of the state legislature to be unconstitutional, individual legislators who voted for the enactment

-14-

[have no standing to] intervene." Planned Parenthood of Mid-Missouri & E. Kan., Inc. v. Ehlmann, 137 F.3d 573, 578 (8th Cir. 1998); cf. Coleman v. Miller, 307 U.S. 433 (1939).  Even if these appellants might have had legislator standing at some point, such standing would have terminated when they left office.  See Karcher v. May, 484 U.S. 72, 81 (1987).

## IV.

In sum, we conclude that appellants do not have taxpayer standing to raise their Free Exercise Clause claim and have not established standing under any of the other grounds which they claim to have pleaded.  The district court therefore did not err in dismissing the claims.

MAGILL, Circuit Judge, dissenting.

Contrary to the majority's assertion, the appellants' standing claim does not require the court to "expand" the holding in Flast v. Cohen, 392 U.S. 83 (1968), because Flast is not applicable to this case.  The taxpayers here are seeking declaratory and injunctive relief against, among others, the State of Minnesota, attempting to enjoin Minnesota from using state funds to pay for certain abortions for low income women. The majority's analysis, while persuasive if this case involved federal taxpayer standing, is inapplicable to our case which involves state taxpayer standing.  The distinction is important because standing in state taxpayer cases is not limited to cases involving Establishment Clause claims.  Because the majority's opinion fails entirely to recognize that parties may properly bring non-Establishment Clause claims under state taxpayer standing, I must respectfully dissent.

## I.

The downfall of the majority's analysis began when it examined what is clearly

-15-

a case of state taxpayer standing under a line of cases that deal only with federal taxpayer standing. Respectfully, the majority erred when it focused its attention on Flast and asserted that it controlled this case. Flast involved an action to enjoin expenditure of federal funds for purchase of textbooks and other instructional materials for use in parochial schools. See id. at 85-86. As many circuit courts have recognized, the test that Flast announced only applies to federal taxpayer cases; in other words, cases against the federal government. For example, part of the limitations that the Court imposed on "federal taxpayers" indicated that standing would only be found in suits alleging the "unconstitutionality [] of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution." Id. at 102. The other Supreme Court cases the majority relies on in rejecting appellants' taxpayer status claims are similarly inapplicable to our case because they all involved issues of federal taxpayer standing. See Bowen v. Kendrick, 487 U.S. 589 (1988) (involving a challenge to a federal grant program); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464 (1982) (involving a challenge to federal action); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (1974) (involving action against the Secretary of Defense); United States v. Richardson, 418 U.S. 166 (1974) (involving an action against the Secretary of the Treasury).

The Supreme Court has not yet indicated what requirements must be met in state taxpayer standing cases, but every circuit court, including the Eighth, that has considered the issue has held that the principles of Doremus v. Board of Education, 341 U.S. 429 (1952), and not Flast, control state taxpayer standing. In Minnesota Federation of Teachers v. Randall, 891 F.2d 1354 (8th Cir. 1989), the Eighth Circuit clearly indicated that Doremus controlled state taxpayer standing cases. In Randall, the issue was whether Doremus requires that a taxpayer must show an increased tax burden in order to have state taxpayer standing. See id. at 1356. The district court in Randall had recognized that under Flast only a disbursement of public funds was required but held that the injury analysis for state taxpayers was still analytically distinct. See id.

-16-

The Eighth Circuit clarified Doremus, holding that Doremus only requires a measurable expenditure of tax money to establish state taxpayer standing and noting that "Flast and Doremus are now relied on interchangeably where establishment clause violations are urged." Id. at 1357.

Other courts that have considered the issue of what line of cases control state taxpayer standing have also indicated that Doremus controls. Colorado Taxpayers Union, Inc. v. Romer, 963 F.2d 1394 (10th Cir. 1992), is one such case that carefully examines the issues involved in state taxpayer cases. In Colorado Taxpayers, after discussing Flast, the Tenth Circuit said that "[b]oth parties mistakenly rely on Flast to resolve whether appellants qualify for taxpayer standing in this case. Flast does not directly govern this appeal because it applies to federal taxpayer standing issues, not questions relating to standing for state taxpayers." Id. at 1399. Instead, the court indicated that the principles of Doremus still apply to state taxpayer cases. See id. at 1399-1400.

Other circuits have agreed with the Tenth Circuit that Doremus controls state taxpayer cases. In Taub v. Kentucky, 842 F.2d 912 (6th Cir. 1988), the Sixth Circuit indicated that "in those cases where violation of the Establishment Clause is not alleged . . . [i]n order to have standing, a state taxpayer must allege direct and palpable injury with sufficient specificity to meet the 'good-faith pocketbook' requirement of Doremus." Id. at 918. See also Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 793 (9th Cir. 1999) (en banc) (noting that "[p]laintiff has challenged the use of municipal and state (rather than federal) tax revenues. That being so, [Doremus] controls the requirements for taxpayer standing in this case."); Board of Educ. v. New York State Teachers Retirement Sys., 60 F.3d 106, 110 (2d Cir. 1995) (indicating that Doremus controls state taxpayer cases).

II.

Although the circuits have affirmed the obvious, that <u>Doremus</u>, and not <u>Flast</u>, controls issues of state taxpayer standing, they have disagreed on the injury a state taxpayer must allege to establish standing. There are two different tests for standing. One test requires that the plaintiff show that her taxes have been increased by the alleged illegal activity and the other has no such requirement. With all due respect, the majority should have explicitly dealt with this difficult issue because the test that the Eighth Circuit adopts could be dispositive in this and other cases.

According to the Tenth Circuit, <u>Doremus</u> requires that state taxpayers satisfy the "good-faith pocketbook" requirement in order to have standing. <u>See</u> <u>Colorado Taxpayers</u>, 963 F.2d at 1399-1400. The "good-faith pocketbook" requirement mandates that "where an Establishment Clause violation is not asserted, a state taxpayer must allege that appropriated funds were spent for an allegedly unlawful purpose and that the illegal appropriations and expenditures are tied to a direct and palpable injury threatened or suffered." <u>Id.</u> at 1401. The injury required for standing is not met merely by showing that funds were appropriated and spent for an unlawful purpose; it requires a showing that the illegal activity resulted in an increased tax burden. <u>See</u> <u>id.</u> at 1403. <u>See also</u> <u>Board of Educ.</u>, 60 F.3d at 110 (agreeing with the Tenth Circuit test); <u>Taub</u>, 842 F.2d at 917-19 (same).

In contrast to the circuits mentioned above, the Ninth Circuit does not require that the taxpayer prove that her tax burden will be lightened by elimination of the questioned expenditure. In <u>Hoohuli v. Ariyoshi</u>, 741 F.2d 1169 (9th Cir. 1984), the Ninth Circuit examined the issue of state taxpayer standing and concluded that the plaintiffs met the <u>Doremus</u> requirements. In <u>Hoohuli</u>, the plaintiffs, as state taxpayers, brought an action challenging a system established by the State of Hawaii that disbursed benefits to residents who had descended from aboriginal inhabitants of the islands. <u>See</u> <u>id.</u> at 1172. The Ninth Circuit announced a three-part test for state

taxpayer standing: 1) taxpayer status; 2) the appropriation of monies from the state's general funds; and 3) the spending of those funds for allegedly unlawful proposes. See id. at 1179-80. See also Cammack v. Waihee, 932 F.2d 765, 769 (9th Cir. 1991) (stating that "Hoohuli, the leading case on this issue in the circuit, does not require that the taxpayer prove that her tax burden will be lightened by elimination of the questioned expenditure"). Based on its three-part test, the Ninth Circuit held that the plaintiffs had standing. First, each of the plaintiffs set forth his or her status as a taxpayer. See Hoohuli, 741 F.2d at 1180. Second, the taxpayers challenged the appropriation, transfer, and spending of taxpayers' money from the general fund of the state treasury and claimed that their tax dollars were being spent on a program which disbursed benefits based on impermissible racial classifications. See id. Third, the plaintiffs' pleadings "set forth with specificity amounts of money appropriated and spent for allegedly unlawful purposes." Id.

It is unclear what test the Eighth Circuit has adopted. Both the Ninth and Tenth Circuits believe that our decision in Randall adopted the Ninth Circuit test. See Colorado Taxpayers, 963 F.2d at 1400 (stating that "[t]he Eight Circuit, in [Randall], agreed with the Ninth Circuit's approach to state taxpayer standing"); Cammack, 932 F.2d at 769 (citing Randall as following the Ninth Circuit's approach). However, it could be that the Randall court intended to limit its holding to Establishment Clause claims. Randall involved an Establishment Clause claim which both the Tenth Circuit, see Colorado Taxpayers, 963 F.2d at 1401, and the Sixth Circuit, see Taub, 842 F.2d at 917, have indicated, unlike non-Establishment Clause claims, do not have to meet the usual state taxpayer requirement of showing an increased tax burden due to the illegal activity.

The Ninth Circuit's test is persuasive and it very well may be that the court in Randall adopted it for all state taxpayer cases. However, in light of the majority's refusal to join the debate, it seems fruitless for me at this time to give an opinion on which test the Eighth Circuit has or should adopt, whether the plaintiffs in this case

-19-

have satisfied the requirements of the appropriate test, and, if not, whether their suit should be dismissed or remanded.

III.

The majority's failure to properly distinguish between state and federal taxpayer standing has led it to the erroneous conclusion that because the plaintiffs in this case allege non-Establishment Clause claims,[7] they automatically do not have standing. While perhaps true in federal taxpayer cases, a cursory review of state taxpayer cases shows that state taxpayers have standing for any claim as long as they meet the requirements of Doremus. In this case, as in Colorado Taxpayers, both parties may have mistakenly relied on Flast to resolve whether appellants qualify for taxpayer standing. However, ignorance by parties should not carry over to this court. This case should be decided through a proper consideration of the relevant cases and issues. By conflating federal and state taxpayer standing, the majority has failed to discuss the difficult issues of state taxpayer standing raised in this appeal. Accordingly, I dissent.

---

[7]It almost goes without saying that courts have never considered state, unlike federal, taxpayer standing to be limited to Establishment Clause claims. See, e.g., Board of Educ., 60 F.3d at 109 (involving a claim that the state violated the Contracts Clause of the Constitution and violated the Due Process Clause of the Fourteenth Amendment); Colorado Taxpayers, 963 F.2d at 1395 (involving a First Amendment free speech claim); Taub, 842 F.2d at 914 (involving an allegation that certain actions of Kentucky violated Article I, Section 10 and the Fifth and Fourteenth Amendments); Hoohuli, 741 F.2d at 1172 (involving a discrimination claim under the Fourteenth Amendment).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.